Williams, J.
 

 The sole query is whether the plaintiff was injured by an act of mob violence, amounting to a lynching within the meaning of Sections 6278 and 6281, General Code.
 

 
 *436
 
 These sections read:
 

 Section 6278. “A collection of people assembled for an unlawful purpose and intending to do damage or injury to any one, or pretending to exercise correctional power over other persons by violence and without authority of law, shall be deemed a 'mob’ for the purpose of this chapter. An act of violence by a •mob upon the body of any person shall constitute a 'lynching’ within the meaning of this chapter.”
 

 Section 6281. “A person assaulted and lynched by a mob may recover, from the county in which such assault is made, a sum not to exceed five hundred dollars ; or, if the injury received therefrom is serious, a sum not exceeding one thousand dollars; or, if such injury result in permanent disability to earn a livelihood by manual labor, a sum not to exceed five thousand dollars.”
 

 These provisions were given a strict interpretation in
 
 Lexa
 
 v.
 
 Zmunt et al., Bd. of County Commrs.,
 
 123 Ohio St., 510, 176 N. E., 82, and the general rule for recovery was laid down in the third paragraph of the syllabus: ''To warrant a recovery under such statute it is not sufficient to show an injury resulting from the acts of a collection of people assembled for an unlawful purpose and intending to do damage or injury to some one, but there must appear also a purpose of exercising correctional power by violence and without authority of law.”
 

 The soundness of the ruling of the trial court turns upon the meaning of ''correctional power.”
 

 On May 29, 1934, about midnight, plaintiff went to the door of his home in Toledo, Ohio, in response to a knock. As he opened the door he was seized by ten to twelve men; they pulled him out into his yard, and there kicked and beat him, and called him a “scab,” a “strike breaker” and other names. At the time a strike prevailed at the plant of Electric Auto-Lite Company, a few blocks away, as it had for
 
 *437
 
 some time previously; but the plaintiff did not work there and was mistaken for some one who did. When the attackers discovered their mistake, they went away, leaving him quite seriously injured. This is a brief recital of the facts but amply sufficient to show the exact nature of the attack.
 

 In contemplation of the statutory enactments affording recovery for lynching, an exercise of correctional power consists in an unlawful attempt by a mob to mete out justice by physical force and violence to a real or supposed wrongdoer without awaiting the action of the lawfully constituted authorities. It is immaterial whether a felony or misdemeanor has been committed or whether the victim of the assault is in custody of the law or whether a charge has been
 
 lodged
 
 against him. If the mob, in assaulting and injuring him, is attempting to administer justice with its own hands in the interest of the public good and is not acting for its own selfish or personal ends, then the assailants exercise correctional power by force and without authority of law.
 

 In the instant case strife prevailed between the strikers and those opposing their demands. A group composed of persons sympathetic to the element supporting the strike attacked a supposed scab or strike breaker in the interest of the strikers. This conduct did not constitute the exercise of correctional power within the meaning of the statutes.
 

 For the reasons given the judgment of the Court of Appeals is reversed and that of the Court of Common Pleas affirmed.
 

 Judgment reversed.
 

 Matthias, Day, Zimmerman, Myers and Gorman, JJ., concur.