Essex County Court of Common Pleas.

BIRLS HAILEY, ADMINISTRATOR OF THE ESTATE OF MILTON HAILEY, AND ADMINISTRATOR AD PROSEQUENDUM OF MILTON HAILEY, AND LINEAL HEIR OF MILTON HAILEY, PLAINTIFF, v. CITY OF NEWARK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.

LOYNE LYONS, AN INFANT, AND HIS NEXT FRIEND, MARY E. WATSON, PLAINTIFFS, v. THE CITY OF NEWARK, DEFENDANT.

Decided March 7, 1944.

For the plaintiffs, *Thomas Potter*.

For the defendant, *Raymond Schroeder* (*Louis A. Fast*).

HARTSHORNE, C. P. J. The proceedings in the two above cases are each brought under the mob violence statutes, more specifically under article 2 covering not only damage to property, but injury to the person, or loss of life by lynching. (*R. S.* 2:63–10, 11; *N. J. S. A.* 2:63–10, 11.) These latter sections refer to, and are defined by, the penal provisions covering mobs. (*R. S.* 2:152–1–3; *N. J. S. A.* 2:152–1–3.) Defendant, the City of Newark, first moved to strike the original complaints herein, both on the ground that the statutes were unconstitutional and that the complaints did not set forth a cause of action under the statute. The facts alleged in each complaint are in substance identic, save that in the Lyons case the plaintiff sues for personal injuries, whereas in the Hailey case the personal representative sues both for the personal injury previous to death, and the death thereafter, of the person injured, both such injuries and death being alleged to have resulted from the same or similar violence of the alleged mob on June 5th, 1943, when a number of individuals are alleged to have attacked not only the above persons but others of a certain racial group, and to have shot at Lyons and Hailey when they fled, killing the latter.

In the light of the decision of the United States Supreme Court in *City of Chicago* v. *Sturges*, 222 *U. S.* 313; 32 *S. Ct.* 92, holding statutes such as this constitutional, and recognized as due process of law from earliest Anglo-Saxon times, even though imposing absolute liability as distinguished from a liability founded upon negligence, the city withdrew its constitutional objection, but pressed the objection that, among other things, the complaints did not show that they fell

within the limits of responsibility created by the statute. Specifically, the defendant objected that the complaints did not set forth facts showing that the mob violence, exerted upon the injured plaintiffs in both cases, was so exerted by the mob "for the purpose of exercising correctional powers or regulative powers over any (such) person," or that in the count for the death of Hailey, same was caused "by lynching." Thereupon the court stayed defendant's motions on condition that plaintiffs amend both complaints to comply with the statute. Such amended complaints having been filed, defendant renewed its above motions thereto.

The question thus is whether the above amended complaints are authorized by the above statute, and more particularly, whether it is essential that such complaints as to personal injuries allege facts showing that the purpose of the mob in its violence was that "of exercising correctional powers or regulative powers" over the persons injured, or that such persons were "supposed to have been guilty of a violation of the law," and that, as to the person killed, same was caused "by lynching." This requires a consideration of the statutory terms and intent.

Here it must be borne in mind that mob violence is the subject, not of a single act, but of three separate statutes. The earliest in point of time (enacted in 1864) gives a civil remedy for damage to property only (*Pamph. L.* 1864, *p.* 237; *R. S.* 2:63–1 to 9; *N. J. S. A.* 2:63–1 to 9); the next, enacted in 1923, as revised, defines a "mob" and imposes criminal penalties (*Pamph. L.* 1923, *ch.* 147, *p.* 316; *R. S.* 2:152–1 to 3; *N. J. S. A.* 2:152–1 to 3); the third imposes a civil liability in damages for either property damage or personal injury in one section, and in another for loss of life "by lynching," this in turn being based upon the above 1923 act, but now appearing separate from the above criminal provisions of such act. (*R. S.* 2:63–10, 11; *N. J. S. A.* 2:63–10, 11.) It is under the last of the above acts that the present amended complaints are alleged to lie. This act has apparently never been judicially construed previously.

The previous decisions of our courts as to mob violence (*Carey* v. *Paterson,* 47 *N. J. L.* 365; 1 *Atl. Rep.* 473; *Clark*

*Thread Co.* v. *Hudson County,* 54 *N. J. L.* 265; 23 *Atl. Rep.* 820; *Wells Fargo* v. *Jersey City,* 207 *Fed. Rep.* 871; *affirmed,* 219 *Id.* 699; *certiorari* denied, 239 *U. S.* 650; 36 *S. Ct.* 284), all dealt with the first of the above statutes, and this statute expressly covered property damage in consequence of "any mob or riot" (*Pamph. L.* 1864, *p.* 237, § 1). It is in nowise limited by the correctional or regulative purpose of such mob, or by the provision that the mob should have caused the death in question "by lynching," as is the statute on which the present complaints are based. Moreover, since these mob violence statutes are all of them in derogation of the common law, it is elemental that they are to be strictly construed. *Wells Fargo* v. *Jersey City, supra.*

Consequently, when the legislature adopted the second of the above acts in 1923, and both enlarged the damages recoverable thereunder to include injury to persons and loss due to death, and also restricted the kind of mob violence which should give rise to such actions for damages, to such mob violence as was exercised on "anyone supposed to have been guilty of a violation of the law, or for the purpose of exercising correctional powers or regulative powers over any (such) person," it clearly made such restrictions, and that as to "lynching," of the essence. If otherwise, any ordinary assault upon any person by five or more individuals would give rise to an action for damages against the city in which such assault occurred, and the cities and counties of our state would thus find themselves faced with civil actions for damages, based on absolute liability, brought by everyone who was assaulted or robbed, for instance, by such a group.

In short, the intent of this statute is not to impose an absolute liability on a municipality to every person injured by the acts of criminals, since crime is bound to occur to some extent, no matter how efficient the municipality's law enforcement may be. But the statutory intent is, to impose such responsibility on a municipality, in cases where its law enforcement has become so inefficient, that the populace, or a portion of them, have felt, rightly or wrongly, that they were compelled to take the law into their own hands, for the purpose of maintaining law and order. (And in the instant

situation it should be noted that both the leaders of the mob in question have been indicted and sentenced to state prison, one for second degree murder, the other for manslaughter.)

Thus the statute in question only covers cases where the person, whose death was caused, was "lynched," and where the personal injuries complained of were suffered by one whom the mob "supposed to have been guilty of a violation of the law," or upon whom the mob intended to exercise "correctional powers or regulative powers." A similar result has been reached by the decisions in various other states under strikingly similar statutes. *Barnes* v. *Chicago,* 323 *Ill.* 203; 153 *N. E. Rep.* 821; 52 *A. L. R.* 560; *Green* v. *Greenville County,* 176 *S. C.* 433; 180 *S. E. Rep.* 471; *Lexa* v. *Zmunt,* 123 *Ohio St.* 510; 176 *N. E. Rep.* 82; *Shake* v. *Commissioners,* 210 *Ind.* 61; 1 *N. E. Rep.* (2d) 132; *Reynolds* v. *Lathrup,* 133 *Ohio St.* 435; 14 *N. E. Rep.* (2d) 599; *Anderson* v. *Chicago,* 313 *Ill. App.* 616; 40 *N. E. Rep.* (2d) 601.

Lynching connotes the summary and illegal meting out of the punishment of death upon one suspected of crime. *Black Law Dictionary, p.* 737; 2 *Bouvier Law Dictionary, p.* 2058. *Green* v. *Greenville County, supra; Barnes* v. *Chicago, supra.* In the count for the death of Milton Hailey, it is nowhere alleged that he was suspected of having been guilty of any crime, nor is such an allegation made in the particulars given by plaintiff in answer to defendant's demand. Since this situation exists even after plaintiff's attention was directed to such possible defect in his original complaint, it must be assumed that the lack of this allegation in the present amended complaint is not a mere second oversight on the part of counsel, but evinces the lack of facts which would bring such case within the statute.

Turning to the count in the Hailey case for personal injury preceding death, we find that, despite the fact that plaintiff was given special leave to amend his complaint in order to allege the fact that plaintiff's decedent was personally injured, either because he was "supposed to have been guilty of a violation of the law" or because the mob was intent on "exercising correctional powers or regulative powers" over him, there is no allegation whatever that Milton Hailey was sup-

posed by the mob to have been guilty of such a violation. And while the complaint states, simply repeating the statutory terms, that the mob was gathered "for the purpose of exercising correctional powers or regulative powers by violence," there is not only no allegation of fact in support of this mere conclusion of law, but the particulars, furnished in support of the complaint, themselves contain no such facts. While it is true that "acts may be stated according to their legal effect," yet "in so doing the pleading should be such as fairly to apprise the adverse party of the state of facts which it is intended to prove." (*S. C. R.* 35; *N. J. S. A. tit.* 2.) And the "pleader must state sufficient facts to enable his adversary to meet fairly the issue propounded." *New Jersey Co.* v. *Lehigh Valley Railroad,* 92 *N. J. L.* 467; 105 *Atl. Rep.* 206. *Harris Pleading,* § 287. Since this condition still exists after plaintiff was on notice of this possible defect in his pleading, it is not only clear that this count in the complaint is not sufficient, but it would appear that the facts are lacking to make it so.

Turning now to the Lyons complaint, we find exactly the same situation to exist, as discussed in the personal injury count of the Hailey complaint. The language of the complaint is substantially identic therewith, both in its original and amended form. The particulars furnished on defendant's demand are also substantially identic with those furnished in the Hailey case. The conclusion reached in the Hailey case of necessity follows as to the Lyons case.

The complaints in both the above cases will consequently be stricken.