26 N.J. Super. 527 (1953)
98 A.2d 340
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT.
v.
RUSSELL ALGOR, CRAWFORD BELL, ET ALS., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 22, 1953.
Decided July 1, 1953.
*529 Before Judges GOLDMANN, SMALLEY and SCHETTINO.
*530 Mr. Benjamin H. Chodash argued the cause for appellants (Mr. Harold Krieger, attorney).
Mr. Robert A. Lederer, Ocean County Prosecutor, argued the cause for respondent.
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendants appeal from an order of the Ocean County Court denying their motion to dismiss the first count of an indictment charging that they
"unlawfully and corruptly did conspire, combine, confederate and agree together, to assemble for the unlawful purpose of offering violence to the person and property of one Elwood Quinn under the pretense of exercising correctional powers over such person by violence and without authority of law, contrary to the provisions of R.S. [N.J.S.] 2A:98-1, and that in the execution of said unlawful agreement and conspiracy between them, * * * and to effect the object thereof, [they] * * * on the 21st day of January, 1952, in the Township of Union, in the County of Ocean and State of New Jersey and within the jurisdiction of this Court, did assemble at the home of the said Elwood Quinn for the unlawful purpose of offering violence to the person and property of the said Elwood Quinn under the pretense of exercising correctional powers over the said Elwood Quinn by violence and without authority of law, contrary to the provisions of R.S. [N.J.S.] 2A:126-1, and against the peace of this State, the Government and dignity of the same."
At the trial the court granted the prosecutor's motion to amend the reference to N.J.S. 2A:126-1 to read N.J.S. 2A:126-1 and 2.
Defendants contend that the indictment failed to charge a crime, basing their argument on the specific language of N.J.S. 2A:126-2, which reads:
"Any person who participates in or is part of a mob, with the intent to inflict damage or injury to the person or property of an individual charged with a crime, or under the pretense of exercising correctional powers over such person by violence, and without authority of law, is guilty of a misdemeanor." (Italics ours)
They assert that the words "such person" in the disjunctive portion of the statute refers to an individual who has been *531 "charged with a crime," and that since the first count failed to state that Elwood Quinn was a person so charged, the indictment is fatally defective.
It is, of course, fundamental that every constituent element of the crime charged must be set forth in the indictment and not left to intendment. State v. Bleichner, 11 N.J. Super. 542, 547 (App. Div. 1951); State v. Solomon, 97 N.J.L. 252 (E. & A. 1922). And Rule 2:4-11 likewise requires that the indictment set out "the essential facts constituting the offense charged." As Judge Jayne observed in State v. Lombardo, 20 N.J. Super. 317, 321 (App. Div. 1952):
"However progressively liberal has become the legislative and judicial attitude toward the literal composition of indictments (see R.S. 2:188-5, 6, 7, 9 [not reenacted in N.J.S. 2A]; Rules 2:4-11, 13) and the discretionary disinclination to quash them unless palpably defective (State v. Western Union Tel. Co., 13 N.J. Super. 172 (Cty. Ct. 1951), yet it is basically imperative that an indictment allege every essential element of the crime sought to be charged. State v. Schmid, 57 N.J.L. 625 (Sup. Ct. 1895); State v. Bleichner, 11 N.J. Super. 542 (App. Div. 1951).
The omission of an essential element cannot be supplied by inference or implication. State v. De Vita, 6 N.J. Super. 344 (App. Div. 1950); State v. Lustig, 13 N.J. Super. 149 (App. Div. 1951)."
On behalf of the State it is argued that although, at first glance, it would seem that the words "such person" in N.J.S. 2A:126-2 refer back to the words "an individual charged with a crime," it is important that the whole statute be read together in order to arrive at a proper construction. The State invites the court to examine the language of N.J.S. 2A:126-1:
"A mob is a collection of 5 or more individuals, assembled for the unlawful purpose of offering violence to the person or property of one supposed to have violated the law, or for the purpose of exercising correctional or regulative powers over a person by violence, and without lawful authority."
The prosecutor emphasizes that this section contains two distinct alternatives: (1) violence to the person or property *532 of "one supposed to have violated the law," and (2) exercising correctional or regulative powers over "a person" (i.e., any person, whether supposed to have violated the law or not) by violence and without lawful authority.
The State also calls attention to N.J.S. 2A:126-3 which makes it a high misdemeanor for any person participating in a mob to inflict "material damage to the property or serious injury to the person of another under the pretense of exercising correctional powers over such person, by violence and without authority of law." Here, again, it is noted that the reference is to any person, whether suspected of violating the law or not.
N.J.S. 2A:126-1 to 3 have their origin in L. 1923, c. 147, entitled "An Act to suppress mob violence." That act was obviously molded after similar legislation in Illinois ("An act to suppress mob violence," approved May 16, 1905; Smith-Hurd Rev. St. 1925, c. 38), and Ohio ("An act for the suppression of mob violence," passed in 1896; General Code, § 6278 et seq.). See Barnes v. City of Chicago, 323 Ill. 203, 153 N.E. 821, 52 A.L.R. 560 (Sup. Ct. 1926); Anderson v. City of Chicago, 313 Ill. App. 616, 40 N.E.2d 601 (App. Ct. 1942); Lexa v. Zmunt, 123 Ohio St. 510, 176 N.E. 82 (Sup. Ct. 1931) and Reynolds v. Lathrop, 133 Ohio St. 435, 14 N.E.2d 599 (Sup. Ct. 1938)  civil actions brought against governmental subdivisions for the recovery of damages arising out of mob violence.
It is important to realize that the 1923 act had a double aspect: criminal and civil. Section 1 (R.S. 2:152-1, now N.J.S. 2A:126-1) defined a "mob." Section 3 and part of section 4, later carried over into R.S. 2:152-2 and 3 (now N.J.S. 2A:126-2 and 3), made it a criminal offense to participate in or as part of a mob. The remainder of section 4, and section 5, carried over into R.S. 2:63-10 and 11 (now N.J.S. 2A:48-8 and 9), created a right of action to recover in damages against a municipality or county for injury to property or person, or for death by lynching, at the hands of a mob. Section 6, which deals with the failure of the sheriff to perform his duties where there is a lynching, *533 and provides for the Governor declaring his office vacant, was allocated to R.S. 40:41-27 in the 1937 revision.
It thus appears that the several parts of the original act dealing with various aspects of mob violence, were distributed in three separate places in the Revised Statutes. In the course of this distribution the definition of a mob, originally section 1 of the 1923 act, became separated from the sections providing for a civil remedy and dealing with the sheriff. The result was that the language of the definition, now constituting N.J.S. 2A:126-1, does not exactly parallel the language of the section immediately following and here in question, N.J.S. 2A:126-2, thereby giving the appearance of possible inconsistency. However, reference to the original act, L. 1923, c. 147, shows that the first section defining a mob has significant meaning and a definite relation to the various sections which followed it and does not work at cross-purposes with section 3, now N.J.S. 2A:126-2.
Those who helped in the drafting of Title 2A should, perhaps, have recast the language now found in N.J.S. 2A:126-1, defining a mob. They were more careful in dealing with R.S. 2:63-10 (now N.J.S. 2A:48-8), embodying that part of the original act of 1923 making a municipality or county liable in damages for mob action, because they gave N.J.S. 2A:48-8 its own definition of a mob. Our analysis of the original act and its amendments and revision leads us to conclude that there is nothing essentially inconsistent between N.J.S. 2A:126-2 and the other parts of that statute.
N.J.S. 2A:126-2 here under consideration is penal in nature. Being in derogation of the common law, it must be strictly construed and applied. In considering the section in question
"It is proper to consider the origin and history of the law, the prior condition of the law, and the general policy and force of legislation * * *. The mischief intended to be removed or suppressed or the cause or necessity of any kind which induced enactment of a law are important factors to be considered in its construction." 2 Sutherland, Statutory Construction (2d ed. 1904), § 471, pp. 884, 885. *534 We are not unmindful of the situations at which the New Jersey act of 1923, its Ohio and Illinois prototypes, and similar laws elsewhere, were aimed  instances of mob violence in its various aspects, running through the whole scale of proscribed action up to lynchings, and found scattered through the chronicle of our times. See, for example, Barnes v. City of Chicago, Anderson v. City of Chicago, Lexa v. Zmunt and Reynolds v. Lathrop, above, as well as Shake v. Board of Comm'rs. of Sullivan County, 210 Ind. 61, 1 N.E.2d 132 (Sup. Ct. 1936), and Hailey v. City of Newark, 22 N.J. Misc. 139 (C.P. 1944). The last-mentioned case, a civil proceeding brought against a municipality for recovery of damages from alleged mob action, traces the history of our statute and is illuminating, although not strictly in point.
It is clear that what was sought to be suppressed by L. 1923, c. 147, § 3 (now N.J.S. 2A:126-2) was mob action against one charged with a crime. The language of the statute is plain and its meaning cannot be tortured to provide support for the indictment which defendants challenge. The words "such person" in N.J.S. 2A:126-2 mean "an individual charged with a crime," and nothing else. Cf. Anderson v. City of Chicago, 313 Ill. App. 616, 623, 40 N.E.2d 601, 604 (App. Ct. 1942); Hailey v. City of Newark, 22 N.J. Misc. 139 (C.P. 1944).
The trial court, and counsel for the State on appeal, would have us read N.J.S. 2A:126-2 so that "such person" refers back to the words "an individual." This would result in the statute reading as follows:
"Any person who participates in or is part of a mob, with the intent to inflict damage or injury to the person or property of an individual * * * or under the pretense of exercising correctional powers over such person by violence, and without authority of law, is guilty of a misdemeanor."
This would raise an obstacle which neither the trial judge nor the attorneys noted, namely, that the indictment as drawn does not allege that the defendants acted with intent to *535 inflict damage or injury, etc. It is basic that when a statute requires a specific criminal intent, the indictment charging the commission of the offense must allege the existence of such intent. Were we to adopt the State's reading of the statute, we would have to notice this plain error on the face of the indictment, for it affects substantial rights of the defendants, although not brought to the attention of the trial court. Rule 1:2-19(a). And so, on the State's own argument, the indictment would have to fall.
Defendants are not, of course, outside the pale of the law. There are other statutes under which they can be indicted and tried for their alleged attempt to exercise "correctional powers" over Quinn "by violence and without authority of law." At the least, they could be charged with assault and battery, or perhaps atrocious assault and battery. In the course of the argument, it was revealed that another count of the very indictment under consideration, not printed in the Appendix because not pertinent to the case, charges defendants with assault and battery.
The order denying defendants' motion to dismiss the first count of the indictment is reversed, and the count dismissed.