SHAKE *v.* BOARD OF COMMISSIONERS OF THE COUNTY OF SULLIVAN.

COFFEY *v.* BOARD OF COMMISSIONERS OF THE COUNTY OF SULLIVAN.

REED *v.* BOARD OF COMMISSIONERS OF THE COUNTY OF SULLIVAN.

SPURLING *v.* BOARD OF COMMISSIONERS OF THE COUNTY OF SULLIVAN.

BRODIE *v.* BOARD OF COMMISSIONERS OF THE COUNTY OF SULLIVAN.

[Nos. 26,369, 26,370, 26,371, 26,372 and 26,373. Filed April 10, 1936.]

62

*John Hickey* and *Thomas F. O'Mara,* for appellants.
*J. Hurley Drake,* for appellee.

FANSLER, J.—In each case under consideration appellant sued for personal injuries resulting from an assault and battery committed upon him by five or more persons because of his having entered into the employment of a certain coal mining company during a strike. It is the theory of the appellants that the county is liable for injuries received under such circumstances, under chapter 85 of the Acts of 1931, p. 245, since repealed.

Demurrers to the complaints were sustained, and this ruling is the basis of the error assigned.

There was no right of action against municipalities for injury resulting from lynching or other mob violence at common law, and therefore recovery, if at all, must be under the statute. Statutes creating rights not given by the common law are strictly construed, and one seeking relief thereunder must bring himself clearly within the terms of the statute. The statute penalizes the municipality for the unlawful conduct of individuals within its borders, and the reasons which require that statutes providing for penalties and forfeitures must be strictly construed are applicable.

The title of the act relied upon is as follows: "An act concerning lynching, providing for the removal and reinstatement of county sheriffs having the custody of persons lynched, authorizing the maintenance of actions for damages sustained as the result thereof, and pre-

scribing penalties for inflicting damage or injury on others in certain cases without authority of law." Section 1 provides that if any person or prisoner shall be taken from the sheriff or the deputy sheriff having such person in custody, and shall be lynched, the Governor shall declare the office suspended. Section 2 provides for the reinstatement of the sheriff upon a showing that he did all in his power to protect the life of the prisoner and that he performed all of the duties required of him for the protection of the prisoner. Section 4 provides that the surviving dependents of a person who shall suffer death by lynching may recover damages from the county where the lynching occurred. Sections 5 and 7 are as follows:

"Sec. 5. Any person who is assaulted and lynched by a mob and who is injured but does not suffer death may have an action against the county where such injury occurs and may recover a determinate sum not to exceed ten thousand dollars."

"Sec. 7. That any collection of individuals, five or more in number, assembled for the unlawful purpose of offering violence to the person or property of any one supposed to have been guilty of a violation of the law, or for the purpose of exercising correctional powers or regulative powers over any person or persons by violence, and without lawful authority, shall be regarded and designated by a 'mob' or 'riotous assemblage.'"

Chapter 169 of the Acts of 1905, p. 584, §440, p. 685, which is still in force, defines a mob and the crime of lynching as follows: "Any number of persons assembled for any unlawful purpose and intending to injure any person by violence and without authority of law shall be regarded as a mob, and any act of violence exercised by such mob upon the body of any person shall, when such act results in the death of the injured person, constitute the crime of lynching; . . ."

Under the act of 1905, a group of persons intending

injury by violence is a mob, regardless of the purpose or motive prompting the violence. But, by section 7 of the law under consideration, a mob is limited to a group of persons offering violence because of a supposed violation of the law, or for the purpose of exercising correctional or regulative powers. Recovery in these cases is limited to injury by a mob as defined in section 7.

The complaints recite that certain individuals, more than five in number, assembled for the unlawful purpose of offering violence to the person of the plaintiffs, and for the purpose of exercising correctional powers by violence, without lawful authority, over and upon the person of the plaintiffs, and that the assemblage of persons was a mob and riotous assemblage. But these are mere conclusions, and we must look to the allegations of fact to determine whether or not the plaintiffs come within the provisions of the statute. The facts alleged show that recovery is sought for injuries resulting from an assault and battery by a collection of persons, more than five in number, assembled for the purpose of offering violence to plaintiffs because of the fact that plaintiffs worked for a coal mining company which did not pay a certain rate of wages. It is clear that violence was not done the plaintiffs for the reason that they were supposed to have been guilty of a violation of the law. Was the violence then "for the purpose of exercising correctional powers or regulative powers . . . and without lawful authority?" The plaintiffs were assaulted and injured because they chose to work at the mine, which they had a lawful right to do, and which was not contrary to any rule, order, code, or regulation which they were bound to obey. There was a mere difference of opinion between the attackers and the attacked. A group of more than five persons might offer violence to and injure some person because of a feud, or a disagreement over a line fence, or the use of

a spring of water, or the right to make social calls in a neighborhood. All such violence could be said to be the violence of a mob as defined in the act of 1905, but, since language is used in the act under consideration evidencing a clear intention to limit the definition existing upon the statute books, we cannot construe the present act as intended to cover everything within the former definition. If "regulative" refers to something other than regulating to the will of the party offering violence, and if "correctional" means something other than enforcing a change of conduct in conformance to that will, they must have reference to correction in respect to some established law or rule of conduct, and regulation in respect thereto. "Correctional" is defined by Webster's New International Dictionary as "designating, or pertaining to, the courts which punish delinquents, esp. minors, by detention in a house of correction, or, loosely, those that have a corrective jurisdiction over petty offenses." Among the definitions of "correction" is "act of reproving or punishing for faults or for deviation from moral rectitude." "Regulation" is defined as "a rule or order prescribed for management or government; a regulating principle; a governing direction, precept, or law; as, the regulations of a society or a school." There may be other obscure and less generally recognized meanings, but, in their generally accepted sense, correctional powers and regulative powers are considered as those vested in some established authority. Established authority implies lawful power, and in this view and meaning of the language, the section must refer to violence offered for the purpose of exercising correctional and regulative powers vested by law in the government, for we cannot conceive of the Legislature taking cognizance of other rule or law-making authority.

Since recourse to mob violence may be prompted by

failure of public officers to enforce the law and exercise the correctional or regulative powers vested in them with respect to individual conduct, there may be some basis in reason and justice for penalizing a municipality and its taxpayers for injuries resulting from such violence. The responsibility for electing efficient public officers is in the local community. There would seem to be far less reason and justice in penalizing the municipality and its taxpayers for injuries resulting from private disagreements about matters or conduct concerning which the public has not assumed power or authority to make rules or regulations. The language of section 7 must be treated as manifesting an intention that municipalities shall be liable only for injuries inflicted by a mob as therein defined. A mob, as defined in the act of 1905, is any group of persons who inflict an injury by violence without regard to the reason for the violence, while in section 7 it is limited to groups of five or more offering violence because of a supposed violation of the law, or for the purpose of exercising correctional or regulative powers. These terms must be interpreted as limiting liability to injuries inflicted by groups of five or more persons who have unlawfully usurped and assumed power to regulate and correct individuals in respect to those matters concerning which the public has assumed jurisdiction to make laws, rules, and regulations. There seems to be no other natural and logical line of demarcation between unlawful violence generally, as described in the act of 1905, and violence as limited by the language of section 7.

The complaints do not bring the cases within the terms of the statute. The demurrers were properly sustained.

Judgment affirmed.

Treanor, J., dissents.

### Dissenting Opinion.

TREANOR, J., DISSENTING—I cannot agree that the terms of §7 (see majority opinion, p. 64) must be interpreted as "limiting liability to injuries inflicted by groups of five or more persons who have unlawfully usurped and assumed power to regulate and correct individuals in respect to those matters concerning which the public has assumed jurisdiction to make laws, rules and regulations." I do not believe that the exercising of "correctional powers or regulative powers over any person or persons by violence" includes only acts of violence engaged in for the purpose of compelling persons to conform to the law of the state. I think that it includes the use of violence by a mob or riotous assemblage for the purpose of compelling other persons to conform to the ideas and standards of conduct of the persons using the violence even though the ideas and standards may be contrary to the law of the state. The evil aimed at in these statutes is the substitution of the exercise of irresponsible power of private individuals for the orderly exercise of power by the state.