VANOSDOL, RECEIVER *v.* HENDERSON, ADMR.

[No. 27,229.   Filed October 11, 1939.   Rehearing denied December 19, 1939.]

242

*Kane, Blain & Hollowell*, for appellant.

*Othniel Hitch*, and *Jonas P. Walker*, for appellee.

SHAKE, J.—This was an action for the alleged negligence of the appellant resulting in the death of the appellee's decedent. There was a jury trial and a verdict and judgment for the appellee. The appeal followed a denial of a motion for a new trial.

By an independent assignment of error the appellant calls for a review of the action of the Superior Court of Marion County, where the suit was commenced, in sustaining the plaintiff's demurrer to the defendant's plea in abatement. It was alleged in the plea that the Union Traction Company was a domestic corporation, organized under the laws governing street railroad companies; that appellant was the duly appointed, qualified, and acting receiver of such corporation, by appointment of the Madison Circuit Court, which court had and retained jurisdiction of said receivership; that appellant personally resided in Madison County; that he had been served with summons in said action by the sheriff of Madison County; and that he had no agent in Marion County authorized to accept service on his

behalf. It is further charged that no leave had been obtained by the plaintiff from the Madison Circuit Court authorizing the institution or prosecution of the action.

After the demurrer to the plea in abatement was sustained, the venue of the cause was changed to the Hancock Circuit Court on the application of the appellant.

It is the contention of the appellee, as shown by the memorandum to his demurrer, that jurisdiction was properly in Marion County, by virtue of Chapter 147, Acts of 1929, § 2-705 Burns' 1933, which provides:

"An action against a railroad or canal corporation or company, or owner of a line of stages or coaches, for an injury to person or property upon the railroad, canal or line of stages or coaches of the defendant, or upon a liability as a carrier, may be brought in any county through or into which such railroad, canal, or line of stages or coaches passes; and an action may be commenced against a receiver without obtaining the consent of the court appointing such receiver; and the summons may be served in any county in the state."

In urging that the above statute does not apply to the present action, the appellant asserts that this being a suit to recover damages for an alleged wrongful death, it is not one for injuries to the person within the contemplation of the above act. In support of his position he relies heavily upon the case of *City of Indianapolis* v. *Willis, Administrator* (1935), 208 Ind. 607, 194 N. E. 343. On the other hand, the appellee leans exclusively upon the statute and the case of *Watson* v. *Brady* (1933), 205 Ind. 1, 185 N. E. 516.

In the Watson case which, incidentally, was one against this same receivership and for damages for an alleged wrongful death resulting from the same accident, this court said (p. 6):

"A reasonable construction of this Act (Ch. 147) makes it applicable in cases where the injury results in death, as well as where it results in personal injuries short of death."

Further along in the opinion the court observed (p. 7) :

"The records show that the appellees (the receiver) filed a motion for a change of venue from Marion County, and the cause, by agreement, was sent to Shelby County, and therefore the appellee waived any right he might have had to object to the jurisdiction of the Shelby Circuit Court over his person. * * *

"There can be no question as to the fact that it was not necessary to obtain the consent of the court that appointed the receiver to begin the action."

In the case at bar the plea in abatement was presented, a demurrer thereto sustained, and an exception reserved prior to the change of venue. There has therefore been no such waiver of jurisdiction here.

The Willis case (208 Ind. 607, 194 N. E. 343) considered a statute regarding actions against municipalities for injuries to person or property. (Ch. 153, Acts 1907, § 11230 Burns' R. S. 1926.) The pertinent language of the statute read as follows:

"That no action in damages for injuries to person or property resulting from any defect in the condition of any street, alley, highway, or bridge, shall be maintained against any city or town of this state, unless written notice containing a brief general description of the time, place, cause, and nature of such injury, shall, within sixty days thereafter, or if such defect consists of ice or snow, or both, within thirty days thereafter, be given to the clerk or mayor or member of the board of trustees of such city or town."

In holding that the words, "action in damages for injuries to person," as used in said statute, did not

embrace actions for damages for wrongful death, this court said (p. 614) :

> "The distinction between an action to recover damages to the person and an action to recover for a wrongful death is so different and so clearly defined and recognized by the courts that we are forced to the conclusion that § 11230, *supra*, has no application to actions by an administrator to recover damages for the wrongful death of his decedent, but must be limited to actions designated in the statute."

Appellant urges, with much logic, that the Willis case, as the last expression of this court on the subject, must prevail over the Watson case unless the latter is to be distinguished on the ground that under the facts appearing therein there was a waiver of the question of jurisdiction by the acts of the receiver in asking for a change of venue from the county where the cause was filed and in agreeing that it might be sent to the court from which that appeal was prosecuted. If such distinction is to be recognized the Watson case is not controlling in the consideration of the case now before the court because, as pointed out above, there was no such waiver of the jurisdictional question by any act of this appellant.

The apparent conflict between the Watson and Willis cases can not be reconciled by any cursory examination of the respective statutes which they consider. Both acts employ substantially the same language—that is, "action * * * for an injury to person or property," and, "action in damages for injuries to person or property." It is therefore necessary to look beyond the express wording of the acts and to inquire into their character, scope, and functions in order to ascertain if their respective clauses quoted above are to be construed alike.

The municipal act (Ch. 153, Acts 1907, § 11230 Burns' R. S. 1926) was an independent statute imposing a condition precedent upon the right to maintain actions against cities and towns for injuries to persons and property. The right to sue in such cases already existed and the limitation imposed by the statute became an incident to a pre-existing remedy. There is no right of action for wrongful death, however, except insofar as it is authorized by statute. Statutes creating rights not given by the common law are always strictly construed and one seeking relief thereunder must bring himself clearly within the terms of the act. *Shake* v. *Board of Commissioners of Sullivan County* (1936), 210 Ind. 61, 1 N. E. (2d) 132. Since the only effect of the act of 1907 was to impose a limitation upon an existing remedy as it related to actions for injuries to persons and property, it should not be construed to apply to cases or classes of cases not necessarily embraced in its terms. It was therefore proper that in construing the municipal act in the Willis case this court should not give the words, "action in damages for injuries to person or property," found therein, a broader meaning than the literal language required and that these words should not be held to embrace actions for damages for wrongful death.

The railroad act with which we are presently concerned is one of a wholly different character. (Ch. 147, Acts 1929, § 2-705 Burns' 1933.) It does not create or relate to a new remedy as such. It is purely procedural. Its very title is:

"AN ACT to amend section 34 of an act entitled 'An act concerning proceedings in civil cases,' approved April 7, 1881."

Another section of the act of which chapter 147, Acts of 1929, is amendatory, provides that:

"The provisions of this act shall be liberally construed, and shall not be limited by any rules of strict construction." (Ch. 38, § 860, Acts 1881 (Spec. Sess.), § 2-4703 Burns' 1933.)

Statutes relating to procedure are always to be construed liberally, the effective administration of justice and the saving of labor and expense to litigants being the objectives to be kept in view. 59 C. J., p. 1129, § 669. It was therefore entirely proper to construe the words, "action * * * for an injury to person or property," found in the act of 1929, as including actions for damages for wrongful death, as was done in the Watson case. There was nothing inconsistent or incompatible in the holdings of this court that the clause, actions for injuries to persons, as used in the railroad act, included actions for wrongful death, but that said clause, as was used in the municipal act, did not include actions for death. The distinctions are justified by the application of the rule of strict construction in the one case and of liberal construction in the other. We conclude that the Superior Court of Marion County did not err in sustaining the plaintiff's demurrer to the defendants' plea in abatement.

The motion for a new trial assigns 162 alleged errors and the appellant's brief presents 25 separate propositions calculated to reverse the cause. Lengthy assignments are made in the motion asserting that there was error respecting the admission of evidence. We can not, in the interest of space, set out the questions, objections, and answers involved and we deem it sufficient to discuss these matters in a general way. A witness for the plaintiff. below was permitted to say that a flasher light signal at the railroad crossing where the accident occurred would cost $900. Another witness was allowed to state the number of

persons killed in the accident in which appellee's decedent lost his life. This testimony was admitted over the general objection that it was incompetent and immaterial and did not tend to prove any issue in the case. There was no claim that the proffered evidence was otherwise prejudicial. Such an objection is not sufficiently specific to present any question for review. *Clark Civil Township* v. *Brookshire* (1888), 114 Ind. 437, 16 N. E. 132. Yet another witness for plaintiff said that the interurban car that figured in the fatal accident was going "pretty fast." The court denied a motion to strike out the answer, based on the ground that it was the conclusion of the witness. While there is a division of authority as to the propriety of evidence of this character, the weight seems to favor its admissibility. See 22 C. J., Evidence, § 676; 20 Am. Jur., Evidence, § 805; 70 A. L. R. 548; 94 A. L. R. 1193. We do not regard the testimony as improper.

Six instances of the abuse of the privilege of cross-examination are claimed in the appellant's brief. The objection to the question in each case was to the effect that the defendant below had not interrogated the witness upon the subject and that the inquiry was not responsive to the examination-in-chief. A very wide latitude is necessarily allowable in the cross-examination of an adverse witness, and how far it may be extended, in any case, is a question largely in the discretion of the trial court; and unless there is manifest abuse of such discretion, its exercise will afford no sufficient ground for the reversal of the judgment. *Ledford et al.* v. *Ledford* (1884), 95 Ind. 283. Appellant stands upon the proposition of technical inadmissibility. There is no showing or claim that the trial court abused its discretion in this regard and we

find no reversible error with respect to the cross-examination of the appellant's witnesses.

Misconduct is charged against counsel for the plaintiff. A special bill of exceptions recites that in his argument the attorney read the interrogatories which were to be submitted to the jury and improperly commented upon them. It is stated that he gave the jury his recollection of the evidence relating to each interrogatory and told them what, in his opinion, the answer thereto should be. It further appears that, commenting on the interrogatories as a whole, he stated that they were cleverly drawn in a manner calculated to confuse; that they were submitted by the court and that he did not submit any of them. It is not improper for counsel to read and comment upon the interrogatories and to array the evidence to be considered in answering them. *Pittsburgh, etc. R. Co. v. Lightheiser* (1907), 168 Ind. 438, 78 N. E. 1033. Counsel perhaps went too far when he told the jury what, in his judgment, the specific answer to each interrogatory should be, and he certainly should not have said that they were cleverly drawn and calculated to confuse and that they were submitted by the court and not by him. However, the alleged error is unavailing here. Appellant did nothing more than abstractly object when the misconduct occurred, though he did, at the conclusion of the argument, move to withdraw the submission. At no time was there a request to have the court admonish the jury to disregard the improper remarks. The trial judge should have been given a timely opportunity to correct the evil effect of the alleged misconduct. In *Southern Ind. R. Co. v. Fine* (1904), 163 Ind. 617, 623, 72 N. E. 589, this court said:

… "If in the argument of a cause counsel go beyond the confines of legitimate argument, the court, as

a minister of justice, should interfere, and this it should do whether opposite counsel are objecting or not. It does not follow, however, that a litigant who claims to have been prejudiced by improper argument can successfully complain of the failure of the court so to interfere. A duty is devolved upon his counsel directly to bring the matter to the attention of the court, to make specific statement, if reasonably required, of the ground of the objection, and, if the wrong is not incurable, to request the court to admonish the jury not to consider the statement to which the objection is made."

On the trial the appellant submitted 117 interrogatories to the jury; 19 of these were answered, "No evidence." Appellant made a motion to require the jury to answer these interrogatories but the court denied the motion and discharged the jury. It is contended by the appellant that it was the duty of the trial court to require the jury to answer each of said interrogatories positively, since there was pertinent evidence of the facts relating thereto. The principal case relied upon is *Life Assurance Co. v. Haughton* (1903), 31 Ind. App. 626, 67 N. E. 950. That suit was upon a policy of life insurance and there was an answer alleging a breach of the warranties contained in the application. To a number of the interrogatories submitted the jury answered, "So stated," "It was so stated," "Don't know," "Evidence not sufficient." It was held, correctly, we think, that these were not answers and that the jury should have been required to make positive responses to the questions propounded. A different rule seems to obtain, however, when a jury answers, "No evidence." In such instances, it has been held that the answers amount to a finding against the party having the burden of proving the facts inquired about. *Indianapolis Abattoir Co. v. Temperly* (1903), 159 Ind. 651, 64 N. E. 906; *Chicago, etc., R. Co.*

v. *Wilfong* (1910), 173 Ind. 308, 90 N. E. 307; *William Laurie Co.* v. *McCullough* (1910), 174 Ind. 477, 90 N. E. 1014, 92 N. E. 337. There was consequently no error in the refusal of the trial court to resubmit to the jury the interrogatories answered, "No evidence." It may be observed in passing that the submission of 117 interrogatories in a case of this character was, within itself, sufficient to confuse and mystify the jury. The practice is not to be commended. *Southern R. Co.* v. *Weidenbrenner* (1916), 61 Ind. App. 314, 323, 109 N. E. 926.

Eleven of the 63 instructions given by the court on its own motion are challenged. Inasmuch as a careful consideration of these charges and the objections urged against them has not revealed any reversible error, we do not deem it necessary to set them out in full. A few general observations with respect to them will suffice. One of the instructions (number 14) was mandatory in character and told the jury that if the allegations of negligence contained in the complaint were established by a fair preponderance of the evidence, and such negligence was shown to be the proximate cause of the decedent's death, the defendant would be liable therefor, unless it was proved by such preponderance that the decedent was guilty of contributory negligence. The objection to this instruction is that it omits the possible negligence of the driver of the truck on which the decedent was riding as the cause of his death. If death was due to the negligence of the defendant, it was not due to the negligence of the driver. By instructions 42 and 43 the jury was told that if the decedent and the driver were engaged in a joint enterprise, or if the driver was acting as the agent of the decedent at the time of the accident, and the injury was caused by the driver's negligence, the defendant would not be liable. By its answer to inter-

rogatory 83 the jury absolved the driver of all responsibility for the accident and under this state of the record there was no prejudicial error in the giving of instruction 14.

Appellant says that the trial court erred in giving instructions 42 and 43 because in defining the legal effect of the relationship existing between the decedent and the driver, if they were engaged in a joint enterprise or if the driver was the agent of the decedent, the court restricted the responsibility of the decedent for the acts of the driver to a consideration of whether the decedent had a right to control the driver at the time of the accident. But we have already pointed out that the jury found against the appellant on the issues of joint enterprise and agency, so that any presentation of the law respecting those relationships was harmless to the appellant. These observations apply with equal force to instructions 44, 46, and 47.

The court told the jury by instruction number 50 that when the decedent approached the railroad crossing over the public highway he had a right to presume, in the absence of notice to the contrary, that any interurban car proceeding over said crossing would be equipped with a headlight, as required by law, and that the statutory signals would be given; that if such interurban car was not so equipped as to lights, or if such signals were not given, those facts might be considered by the jury in determining under all the circumstances, whether the decedent exercised ordinary care for his own safety. We find nothing wrong with this charge. It did not, as appellant suggests, authorize the jury to indulge a presumption of negligence against the defendant below.

Instructions 18, 19, and 41 were predicated upon the proposition that failure on the part of the appellant to have its interurban car equipped with a headlight, as required by a regulation of the Public Service Commission of Indiana, would amount to negligence per se. It was stipulated that the car in controversy had been so equipped, but by answers to the interrogatories the jury found that at the time of the collision the headlight was dim and would not disclose an object the size of a man standing erect 600 feet in advance of such car, as required by said order. It was therefore proper that the jury should be instructed as to the requirements of the commission's order and the effect of a failure to comply therewith.

Instruction number 37 given by the court on its own motion was as follows:

"I instruct you that whenever an interurban railway crossing is for any reason particularly hazardous, you may consider the fact if it be a fact, that there were or were not any warning signals, gates, bells, or watchman, together with all other circumstances concerning the crossing, such as the near situation of houses, trees, vegetation, and the frequency with which travelers pass over the crossing, in order to determine whether or not the operation of the car in the manner, and at the speed that it was operated, and the sufficiency of the illumination of the head light was or was not negligence."

In *Watson* v. *Brady* (205 Ind. 1, 12, 13, 185 N. E. 516) Hughes, J., speaking for this court, said:

"Whenever a railroad crossing is for any reason particularly dangerous, it is not a question for the jury to decide whether or not a railroad company should provide signalling and safety devices at any particular crossing, but the jury may consider the fact that there were no devices or watchmen together with all the other circumstances surrounding

the crossing such as the near situation of houses, trees, vegetation and the like, and the frequency with which travelers pass over the crossing in order to determine whether or not the operation of the car in the manner and at the speed that it was operated, was negligent."

The above instruction was proper.

We are asked to hold that the verdict is not sustained by the evidence and that the trial court should have rendered judgment for the appellant on the answers to the interrogatories. While the evidence is conflicting, we find it sufficient to sustain the judgment; likewise, the answers to the interrogatories may be harmonized with the general verdict.

Judgment affirmed.