**Ralph JOHNSON and Nardine H. Johnson, Plaintiffs-Appellees,**

v.

**BALTIMORE AND OHIO RAILROAD COMPANY, Defendant-Appellant.**

**No. 75–1180.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 24, 1975.

Decided Jan. 7, 1976.

Rehearing and Rehearing En Banc Denied Feb. 19, 1976.

Charles G. Bomberger, Gilbert F. Blackmun, Hammond, Ind., for defendant-appellant.

Max Cohen, Gary, Ind., for plaintiffs-appellees.

Before CLARK, Associate Justice (Retired),* and CUMMINGS and PELL, Circuit Judges.

CLARK, Associate Justice:

This is a diversity suit involving a collision occurring at a grade crossing in Porter County, Indiana, between a Baltimore and Ohio Railroad Company (B & O) freight train and an automobile driven by Ralph Johnson, a squad commander of the Indiana State Police. The jury returned verdicts of $325,000 for Johnson and $50,000 for his wife, Nardine. B & O makes six arguments on appeal, each relating to both judgments: (1) lack of sufficient evidence of negligence on the part of B & O, (2) contributory negligence as a matter of law on the part of Johnson, (3) improper jury instructions and failure of proof concerning the grade crossing's alleged extra-hazardous condition, (4) the inapplicability of an Indiana weed-cutting statute to negligence claimed, (5) the power of the jury to forgive Johnson's alleged violation of an Indiana safety statute, and (6) the excessiveness of the jury awards.

1. *The Circumstances of the Accident:*

On Thursday, September 25, 1969, Johnson went fishing alone at Forszt Lake and parked his car some 500 to 1,000 feet from a B & O grade crossing. At dusk he drove his car with the headlights burning eastward toward his home. As he went along the road down a slight incline toward the B & O crossing involved here, he came to a stop some 20 to 30 feet from the B & O intersection with the road. He had a clear vision down the track to his right for a distance of two hundred to three hundred feet. He looked to both his right and his left, but neither saw nor heard the approaching train and so drove on over the crossing. The B & O freight train hit his car on the right rear side. Johnson remembered nothing more until he regained consciousness at the hospital.

Johnson was quite familiar with the area and testified at trial that the foliage and trees along the right of way were about the same as they were on his previous visits. He testified further that he could see only 200 to 300 feet to his right because of the foliage, weeds, undergrowth, and trees that grew on the railroad right of way. There is a curve in the track to the right from the direction the train came that is a half mile or less from the grade crossing.

The train was a freighter with three diesel units, 55 cars and a caboose. The headlight on the train was burning and threw a beam of about 1,000 feet. About 1600 feet from the grade crossing, there was a whistle post at which the engineer was supposed to blow the whistle. Although the engineer on the train testified at trial that he started to blow the whistle at that post and continued until the collision, there were several

---

* Associate Justice Tom C. Clark, United States Supreme Court, Retired, sitting by designation.

persons who testified to the contrary. At the time of the accident, three men were approximately 400 feet from the grade crossing working on the roof of a house under an artificial light powered by a small generator. Each testified at trial that he never heard the train whistle. Two other people who were in their respective homes from 200 to 500 feet and 1,000 to 1,500 feet from the intersection when the collision occurred did not remember hearing a train whistle. The head diesel ran at least two miles beyond the grade crossing after the collision before coming to a stop.

Johnson was 52 years of age at the time of the collision. He had been with the Indiana State Police since 1951 and enjoyed the rank of sergeant. Previously he had injured his back in line of duty. He underwent surgery for that injury, a lumbar laminectomy for a herniated inter-vertebral disc. He had been certified, however, to return to duty some two years before the B & O collision and had been promoted to line commander, which position he held at that time. Two months after the collision, Johnson was returned to duty but was retired thereafter on October 10, 1972, for his disability. He received full pay before retirement which was $532 each two weeks. His hospital, medical and doctor bills totaled $3,778.61.

## 2. The Sufficiency of the Evidence:

While there is, of course, conflicting testimony on the question of the negligence of B & O to sound the whistle, the hazard of the crossing, and B & O's failure to clear the right of way of trees, shrubbery, etc., nonetheless, the record discloses ample evidence to take each of these issues to the jury. Consequently, the jury's verdict is not assailable here. Likewise, there was testimony by Johnson that he brought his car to a complete stop before negotiating the grade crossing, and heard no whistle and saw no train, and only then proceeded across the tracks. Such evidence was sufficient to put the question of Johnson's culpability for violating the Indiana safety statute to the jury. Thus again

the finding of the jury that he was not contributorily negligent is not assailable here. The two duties imposed by the Indiana statute, Burns' Ind.Stats.Annot. —Code Ed. 9–4–1–106 [47–2114] (1973), namely to stop within 50 feet but not less than 10 feet from the tracks and to proceed only when it can be done with safety, were fully performed by Johnson. He testified that he stopped within fifty feet of the tracks and, not hearing any whistle, train bell, or seeing any searchlight, proceeded as a person of ordinary prudence would do across the tracks. The jury certainly believed Johnson and thus determined that he was not in violation of the Act. It is true that the train was actually in a most hazardous position. But that fact was unknown to Johnson. The train's searchlight might not have been visible to him because of the angle of the track crossing. Moreover, the condition of the roadway, as well as the existence of the curve in the tracks some half mile from the crossing, only contributed to the obstruction of his view caused by the heavy foliage, weeds, underbrush and trees on the railway right of way.

We agree with the jury that Johnson was not contributorily negligent, but even if we disagreed, there is sufficient though disputed, evidence to find that he was not. The jury decided the issue on that evidence and we cannot disturb that finding.

The same is true of the awarding of the damages. There was ample evidence of a severe injury to Johnson. We cannot say that the verdict was so monstrous that a remittitur is required. This is also true of the $50,000 recovery of Mrs. Johnson.

## 3. Erroneous Instructions:

B & O also insists that the issue and instruction on "extra-hazardous crossing" should not have been submitted to the jury by the trial court. It claims that the power to make such a determination rests exclusively in the Indiana Public Services Commission and that there was no evidence supporting such a charge in any event. However, in

*Hartzler v. C & O Railway Co.,* 433 F.2d 104 (7th Cir. 1970), this Court held that it was permissible to leave the issue of an extra-hazardous crossing to the jury, exactly what was done here. *Hartzler* followed the lead of the Indiana Supreme Court in *Central Indiana Railway v. Anderson Banking Company,* 252 Ind. 270, 247 N.E.2d 208 (1969). B & O seems to say that Indiana has changed the *Anderson* rule by statute. However, *Anderson* was decided some four years (1969) after the amendment to which B & O refers was enacted (1965). See *also, Indianapolis Union Railway v. Walker,* Ind.App., 318 N.E.2d 578 (1974). Our examination of the record shows ample evidence supporting the negligence of the B & O aside from the hazardous nature of the crossing. In any event, the instruction was in keeping with Indiana law.

Finally B & O objects to an instruction that a violation of Indiana's weed-cutting statute, Burns' Ind.Stats.Annot.— Code Ed. 8–3–7–1 [55–3512] (1973), constitutes evidence of negligence. The statute requires the cutting and destruction of "noxious weeds" growing on railroad property between July 1 to July 20 of each year. We find no harm in the instruction. While the statute may well have been primarily aimed at the spread of weeds and brush to contiguous land, the instruction required a finding not only that B & O had violated the statute but also that such violation appreciably contributed to Johnson's injuries. This removed any possible objection to the court's action in this regard.

We therefore find no merit in the contention.

Finding no error in the trial, we affirm the judgments.

PELL, Circuit Judge (dissenting).

With the greatest of respect for the judicial acumen of the members of the majority of the present panel, I am constrained to come to the conclusion that the disposition of this appeal rests too much upon the tendency that overbusy appellate courts have to worship mechanically at the shrine of inviolability of the findings of fact which the trial trier of facts has purported to make. From the record of this case I cannot realistically conceive that the collision between the Johnson automobile and the defendant's train was not in part proximately caused by negligence of the plaintiff driver. I therefore think it our duty to say that under the controlling law of the state of Indiana since Johnson was contributorily negligent as a matter of law there should be a reversal. For that reason, and because of an instruction error, I dissent.

For the purposes of this dissent on the sufficiency question, I must assume that there was evidence from which the jury could find there was negligence on the part of the defendant proximately causing the collision. Further, I must assume all facts in dispute as to contributory negligence from the point of view most favorable to the plaintiffs. However, I must also apply the law of Indiana in examining the question of contributory negligence. *Hoesel v. Cain,* 222 Ind. 330, 53 N.E.2d 165 (1944). There are no degrees of negligence in Indiana, and if the plaintiff driver was guilty of any negligence, *however slight,* and such negligence proximately contributed to his injury, he cannot recover. *Huey v. Milligan,* 242 Ind. 93, 97, 175 N.E.2d 698, 700 (1961).

Looking at the facts as is done in the majority opinion, I note that the collision happened at dusk when common knowledge indicates beyond any reasonable argument that a locomotive headlight throwing a beam about 1,000 feet would have its visibility heightened. This was not a case in which the sun was shining brightly from the direction from which the train was coming. Assuming that Johnson stopped some 20 to 30 feet from the intersection, as his changed testimony indicated,[1] he either did not look in

---

1. In his deposition Johnson testified that he complied with the Indiana statute by stopping 10 to 15 feet from the tracks. Later upon summary judgment proceedings when a photo-

the direction from which the train was coming or he did not see that which of necessity was visible. Since the jury apparently credited his testimony that he did stop and that he did look, the only conclusion left is that he failed to observe that which he would have seen if he had exercised the care of a reasonable man. He claims he did not see the oncoming train. It is obvious that he did not see it. There is no indication that he was bent on suicide. Nevertheless, the train was there. It did not materialize from thin air. Its approach to the point of impact was simultaneous with that of Johnson. Both arrived at the intersection at the same time and even if the train's speed were 10 times that of Johnson, a train speed far greater than any supported by the evidence, the locomotive could not have been much more than a football field away from the intersection when Johnson started up after his claimed stop. This was a crossing with which he was familiar marked by the statutory cross-buck "Danger" sign. As to the direction from which the train was coming Johnson did not even have to look to a full 90 degrees as the angle of the track with relation to the highway permitted his seeing down the tracks prior to entrance on the tracks by turning his head at approximately a 42 degree angle to the right.

The majority opinion refers to the fact that the train was actually in a most hazardous position as Johnson entered on the tracks but that fact was unknown to him. I cannot conceive upon the undisputed physical facts here any basis for determining that the lack of knowledge resulted from anything other than carelessness on his part which proximately was a contributing cause of the collision. There was nothing about the angle of the crossing which would have prevented Johnson from seeing the locomotive headlight if he had looked with the care required of a reasonably prudent person. There was nothing about the condition

of the roadway to have contributed to the obstruction of the view. This was a country road with no other distracting traffic which also required the attention of the automobile driver. The majority also suggests obstruction from the existence of the curve in the tracks some half mile from the crossing. The locomotive, however, was not a half mile away but at the crucial time was, of physical necessity, within several hundred feet of the intersection. Finally, the majority opinion refers to the heavy foliage, weeds, underbrush and trees on the railway right of way. This assertion simply is not supported by the record. On the morning following the accident, photographs were taken from various points on the highway looking down the tracks. A copy of one of these is appended to this dissent. The photograph taken at a point 30 feet from the south, or nearest, rail although scarcely an example of the finest in the photographic arts, clearly demonstrates that a side road was alongside the tracks and all trees and shrubs were well away from the tracks and could not have been obstructive. What weeds there were were low lying and could not have interfered with the view of the locomotive headlight at the elevation it was.

It has not been suggested that this court in *Moss v. Pennsylvania R. Co.,* 146 F.2d 673 (7th Cir. 1945), did other than apply Indiana law correctly. There this court found it unnecessary to consider the Indiana statute requiring a motorist to stop when a train is in hazardous proximity:

"Ignoring this statute, it still seems to us clear that deceased should have stopped, rather than have driven on the track in front of the engine.

In reaching this conclusion we are taking the most favorable and charitable view of deceased's action, namely, that he did not endeavor to race with the engine, but rather that he failed to look and therefore failed to see the

graph demonstrated a clear view of some 1600 feet down the tracks from the highway from at least 40 feet back from the tracks, Johnson's

affidavit indicated his stop was between 20 to 30 feet back.

oncoming train. We are accepting the *estimate* of plaintiff's witness rather than the *measurements* of defendant's witnesses, solely on the theory that it is the testimony most favorable to plaintiff that can be found in the record.

He should have looked. He must be charged with the information which he would have received had he looked.

There is one fact thus far not mentioned, which plaintiff has properly stressed and which we have not overlooked. The railroad tracks and the highway did not cross at right angles. The highway ran north and south. The railroad right of way ran southeast and northwest. The train which struck Moss was coming from the southeast at an angle of about forty-five degrees. To have seen it coming the deceased would have had to turn his head further than if it crossed at right angles. The train was obviously, clearly and warningly observable. The duty of the traveler was to look, not merely at right angles, but down the path of the right of way. He can not be excused for not looking as he approached the railroad double track with intent to pass over it. Had he looked he could not have failed to see the train. As it traveled the last six hundred feet before reaching the crossing, it was almost as clearly observable as if the tracks ran at right angle to the highway. The photograph supports common observation in making this statement.

The conclusion which we have reached seems to us to be unavoidable. Deceased drove his automobile out in front of an oncoming train which he must have seen had he looked. He met the inevitable fate which such action forecast. The accident is distressing, most unfortunate, but liability must be measured by the facts." (Emphasis in the original.) 146 F.2d at 677–78.

The decision that the majority has reached in this case appears to me to be a clear overruling of *Moss* as authority.

In sum, I disagree with the majority that we cannot disturb the finding of the jury on the matter of contributory negligence. I think it is our duty to do so under the law of Indiana where it is clear that there has been contributory negligence as a matter of law. If a plaintiff is entitled to recover because his negligence proximately causing an accident is quantitatively less in degree than that of a defendant, then the courts or legislature of the state of Indiana should make that determination. It is not presently the law of that state.

But even if I should take a contrary position on the sufficiency issue, which in my case would be myopic obeisance at the inviolability shrine, there was an instruction error in the trial of this case which, in my opinion, was sufficiently egregious to require a reversal for a new trial.

The matter of obstruction of view of necessity had to play a dispositive part in the jury verdict. The automobile driver was familiar with the crossing. He testified that he stopped and looked and saw no approaching train. Since it was there, I see no other conclusion than that the jury thought the railroad company was somehow chargeable with negligence in preventing his seeing the locomotive which was there all of the time during the driver's approach. This aspect of the defendant's culpability which in the mind of the jury relieved Johnson from contributory negligence in not seeing the approaching train was firmly fostered by the court's instruction pertaining to the duty of the railroad with regard to the removal of weeds.

In the complaint the seventh specification of negligence against the defendant was as follows:

"G. Defendant negligently failed to maintain said crossing so that the view toward said crossing for oncoming motorists and particularly for plaintiff would be unobstructed. That said crossing was obstructed by trees and shrubbery and the natural slope of the terrain; that defendant was negligent

in maintaining an extra-hazardous crossing."

The plaintiffs tendered two instructions pertaining to this charge of negligence. Tendered instruction number 23 reads as follows:

"You are instructed that the defendant was under a duty to prevent undergrowth, brush and foliage from accumulating on its right-of-way so as to obscure the view of the tracks to motorists approaching or entering said crossing. If you find that the defendant did allow undergrowth, brush and foliage to accumulate on its right-of-way and that such undergrowth, brush and foliage did in fact obscure the view of the plaintiff, Ralph Johnson and you further find that the plaintiff might have avoided colliding with the defendant's train had his view of the tracks not been obscured, you may reasonably infer that the defendant was negligent in allowing the undergrowth, brush and foliage to accumulate along its right-of-way."

Plaintiffs' tendered instruction number 24 reads as follows:

"You are instructed that at all times in issue, there was a statute of the State of Indiana which was in full force and effect provided as follows:

'All railroad corporations doing business in this state shall between the first (1) day of July and the twentieth (20) day of August in each year, cause all thistles, burrs, docks and other noxious weeds growing on land occupied by them in any city, village or township of this state, to be cut down and destroyed.'

"If you find that the defendant violated this statute and that such violation proximately contributed to the plaintiff's injuries, such violation would be evidence of negligence on the part of the defendant."

This instruction, number 24, substantially accurately quotes an Indiana Statute found at Burns' Ind.Stats.Annot.—Code Ed. 8–3–7–1 [55–3512] (1973), a statute which was enacted in 1889 and

has not been amended since that time. A second section, now 8–3–7–2, was enacted at the same time and reads as follows:

"In case any railroad company shall refuse or neglect to comply with the requirement specified in the first section [8–3–7–1] of this act, such company shall be liable in a penalty of twenty-five dollars [$25.00], to be prosecuted for in an action of debt by any person feeling himself aggrieved. Said suit may be brought before any justice of the peace in the county, who shall require of the complainant surety to pay costs in case he fails to maintain his action; summons may be served on any agent or officer of the company."

The trial court in settling instructions indicated it would give its own numbered instructions and would decline all of the tendered instructions "except to the extent that said Instructions are covered in the Court's instructions."

The court's instructions did not include a general common law obstruction of view instruction in any way encompassing the approach indicated in the plaintiffs' instruction number 23. The court did, however, give the following instruction, its number 32:

"You are instructed that at all times in issue, there was a statute of the State of Indiana which was in full force and effect provided as follows:

'All railroad corporations doing business in this state shall, between the first (1) day of July and the twentieth (20) day of August in each year, cause all noxious weeds growing on land occupied by them in any city, village or township of this state, to be cut down and destroyed.'

"If you find that the defendant violated this statute and that such violation proximately contributed to the plaintiff's injuries, such violation would be evidence of negligence on the part of the defendant."

The trial court in giving his instruction and purporting to quote the Indiana

statute which had been in plaintiffs' instruction number 24 omitted from the statutory phrase "all thistles, burrs, docks and other noxious weeds" the key words "thistles, burrs, docks and other." The importance of these words is that they demonstrate graphically the purpose of this statute which is to protect neighboring lands from the spread of noxious weeds. With the omitted words in the text, the maxim of *ejusdem generis* would confine "noxious weeds" to the same kind or class as thistles, burrs, and docks. Black's Law Dictionary, Rev. 4th Ed. at 608 (1968).

In denying the defendant's motion for a new trial, the district court stated that "[o]ne of the specifications of negligence in the plaintiffs' complaint and pretrial order was the failure to clear its right of way of undergrowth, brush and foliage so that the view of oncoming motorists would not be obstructed." The court then found that the challenged instruction number 32 was "consistent with a specification of negligence which had not been withdrawn from the jury and encompassed the plaintiff's theory in regard thereto." The court, however, gave an unjustified liberality of construction to the plaintiffs' assertion of negligence since the complaint and pretrial order referred only to obstruction resulting from "trees and shrubbery." Since the record however, does contain an unobjected-to leading question and answer:

"Q. Do those bushes, weeds, trees, obscure your view to the south as you approach the crossing?

A. Yes, sir,"

I will assume, despite the indefiniteness as to the point on the highway at which the weeds assertedly obstructed the view, that the complaint was amended to conform to the proof.

Despite the clear evidence from the photographs that the low-lying weeds [2] could not conceivably have prevented the driver from seeing the locomotive headlight, the only instruction given the jury remotely relating to the issue of Johnson's view being obscured [3] pertained to the matter of weeds and was based upon a statute which was wholly inapplicable to the matter of the safety of a driver on the highway. The instruction told the jury that if it found that the railroad had violated the statute, and there was no evidence one way or the other as to whether the railroad did,[4] such a violation could be evidence of negligence. The real evil of the instruction is that it placed the possibility in the mind of the jury that the railroad was a violator of the statutory law of the state of Indiana when the statute in question had no applicability to the case in front of the jury. The egregiousness was compounded by the fact that the court immediately following this inapplicable instruction gave number 33 as follows:

"An act which is performed in violation of a safety statute or regulation is presumptively an act of negligence but that presumption is not conclusive and may be rebutted by showing that the act was justifiable or excusable under the circumstances. Until so rebutted that presumption is conclusive.

"Where a person has disobeyed such a statute he may excuse or justify the violation in a civil action for negligence by sustaining the burden of showing that he did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law."

By this juxtaposition a strong inference is carried to the jury, which had the

---

2. In final argument plaintiff's counsel referred to three feet as the height of the weeds.

3. Actually there was no reference in the instruction to the matter of view being obstructed or obscured. In essence, the instruction was little more than a statement of a statute in the abstract. "[A]n abstract unexplained quotation from a statute should not be included in

the instructions." 28 West's Indiana Law Encyclopedia, Trial § 189 at 181–82 (1960).

4. Counsel for the plaintiff did argue to the jury that "the inference is clear that the defendant failed to obey the statute," which argument was based upon the height of the weeds at the time of the accident, *i. e.,* three feet.

instructions with it during its deliberations, that the statute quoted verbatim in the immediately preceding instruction was a safety statute. The next nearest preceding instruction referring to a statute but not purporting to quote it verbatim was instruction number 25.

For the purpose of putting the present matter in context I have assumed the utter inapplicability, as a matter of law, of the challenged instruction in the law suit. I now turn to that law. The statute upon which the instruction was based, enacted in horse-and-buggy days, has been before the courts only once, and that was not in connection with any claim that a civil action of the type involved in the present case could be based upon it. In *Chicago, T. H. & S. Ry. Co. v. Anderson,* 182 Ind. 140, 105 N.E. 49, Ann.Cas.1917A, 182 (1914), the Indiana Supreme Court considered the constitutionality of the statute and deemed it to be a proper exercise of the police power and that the complaint was not insufficient because the plaintiff who sought the $25.00 penalty had not alleged actual damages. The case was reviewed by the United States Supreme Court in *Chicago, Terre Haute & Southwestern Railway Company v. Anderson,* 242 U.S. 283, 37 S.Ct. 124, 61 L.Ed. 302 (1916), and the judgment was affirmed. That Court pointed out some potential deficiencies in

the statute but declined to base its decision on a possibility of unconstitutionality under speculative possibilities. Pointing out that the statute in the case below had only been applied in favor of a contiguous land holder and that only one recovery had been permitted, the court held that "[s]o limited we think its validity must be admitted . . . ." 242 U.S. at 288, 37 S.Ct. at 126. The Court declined to express an opinion "concerning the consequences if a broader construction should be accepted by the state court." *Id.*

As noted above, the Indiana Supreme Court opinion was the subject of reporting in Ann.Cas.1917A and the annotation therewith beginning at 183 reflects clearly that the states which had adopted a similar statute were doing so because of the lack of a common law duty to keep one's land free from noxious weeds and lack of common law liability if those weeds should spread to the lands of others. Such statutes, the annotation reports, being in derogation of the common law should be strictly construed. The annotation in Burns' Statutes records as comparative legislation statutes of Iowa and New York; Iowa Code 1966, §§ 477.53–477.55 and McKinney's Consolidated Laws of New York, vol. 48 § 82.[5]

It is hornbook law that a right of action based upon a statute exists only in

---

**5.** Iowa:

"477.53 Destruction of weeds

It shall be the duty of every corporation owning or operating a railroad in this state on written notice from the owner, lessee or occupant of any land abutting upon its right of way to cut and burn, or otherwise destroy once each year during the month of July, all cockleburs, burdock weeds, quack grass, and thistles on its right of way adjacent to said land.

477.54 Violations

Any failure to comply with the provisions of section 477.53 shall be deemed a misdemeanor and shall be punished accordingly.

477.55 Enforcement

It shall be the duty of the county attorneys in the respective counties to enforce the provisions of sections 477.53 and 477.54."

New York:

"§ 82. Canada Thistles to be cut

Every railroad corporation doing business within this state, shall cause all Canada thistles, white and yellow daisies and other noxious weeds growing on any lands owned or occupied by it, to be cut down twice in each and every year, once between the fifteenth day of June and the twenty-fifth day of June and once between the fifteenth day of August and the twenty-fifth day of August. If any such corporation shall neglect to cause the same to be so cut down, any person may cut the same, between the twenty-fifth day of June and the fifth day of July inclusive, and between the twenty-fifth day of August and the fifth day of September inclusive in each year, at the expense of the corporation on whose lands the same shall be so cut, at the rate of five dollars per day for the time occupied in cutting."

The Iowa statute apparently originated in 1913 and the New York statute was a revision of a statute first enacted in 1847.

favor of a person or persons having an interest in the performance of the statutory duty and for whose benefit the duty was imposed. "It [a right of action] does not exist in favor of one, to whom the benefit to be derived from the performance of the statutory duty is merely incidental and no part of the design of the statute, and such a person cannot base a cause of action on a violation of the statute." 1 C.J.S. Actions § 9, at 992 (1936). It appears to be beyond argument that the sole purpose of the enactment of the statute was to curb the spread of noxious weeds and that therefore the district court erred in permitting by the challenged instruction the plaintiffs to base their action in part upon a violation of the statute. There is a complete absence of any indication that the legislature had the intention of vesting a claim for damages in a traveler upon the highway based upon a violation of the statute, and there is no need for fashioning such a remedy upon this single-purpose statute since a common law negligence remedy was adequately available. *Cf., Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).

Indiana follows the general principle that an action cannot be based upon a violation of a statute which has no application to the cause of action asserted. Statutes creating rights not given by the common law are strictly construed, and one seeking relief thereunder must bring himself clearly within the terms of the statute. *Shake v. Board of Commissioners,* 210 Ind. 61, 1 N.E.2d 132 (1936); *Vanosdol, Receiver v. Henderson, Admr.,* 216 Ind. 240, 22 N.E.2d 812 (1939). If one cannot bring himself within the terms of the statute, *i.e.,* base his action either wholly or in part upon the statute, it is difficult to find any rational justification for including the statute in an instruction which has the effect of telling the jury that violation of the statute may be the basis for a recovery. "Instructions should not only state correct principles of law, but they should be applicable to the issues and facts of the particular case in which they are given."

*Conder v. Griffith,* 61 Ind.App. 218, 223, 111 N.E. 816, 818 (1916).

The majority opinion conceding that the statute may well have been primarily aimed at the spread of weeds to contiguous lands, holds in effect that the error was harmless since the jury also had to find that the violation proximately contributed to the plaintiff's injuries. However, the jury could not legally find that a violation of this particular statute could be a proximate cause of the accident. Perhaps the growth of weeds which obscured the view of the driver could be a proximate cause of an accident but the failure to comply with the statute by cutting thistles and other noxious weeds could not. The instruction imposed a non-existent duty on the railroad insofar as the particular plaintiffs were concerned. The court could have instructed upon the common law duty but did not do so. The instruction actually used, being improper, could not have been other than misleading to the jury.

In *B & O Railroad Co. v. Brown,* Ind. App., 290 N.E.2d 742 (Ind.App.1972), an instruction was given by the trial court regarding the placement of warning signs at highway crossings. The instruction concluded by stating that a violation of the statute by the railroad would constitute a presumption that the railroad was negligent. The Court of Appeals in reversing for this and other instruction errors pointed out that the cited statute pertained to matters immaterial to the issues in the case.

In *Summers v. Weyer,* 141 Ind.App. 176, 226 N.E.2d 904 (1967), a personal injury case, error was claimed in the giving of instructions numbered 1 and 9 which respectively read as follows:

"Any person who violates a duly enacted statute of the State of Indiana regulating the operation of a motor vehicle is a wrongdoer and is negligent in the eyes of the law and any innocent person injured by such a violation of a statute regulating the operation of a motor vehicle, if it be the proximate cause of the injury, may recover damages from such person."

\* \* \* \* \* \*

"I instruct you that at the time of the collision involved in this case there were in full force and effect duly enacted statutes of the State of Indiana which, in their material parts, provided as follows:

'No person shall . . . turn a vehicle from a direct course upon a highway unless . . . after giving an appropriate signal in the manner hereinafter provided . .

(b) A signal of intention to turn . . . left shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning.

Any . . . turn signal when required herein shall be given by means of the hand and arm or by a signal lamp or lamps or mechanical signal device . . .' " 141 Ind. App. at 178–79, 226 N.E.2d at 906.

The Indiana Appellate Court had no difficulty in reversing after pointing out that the quoted statute in No. 9 did not have any application in the case to actionable negligence. The pertinent language of the reviewing court is as follows:

"Where specific acts of negligence are alleged in a complaint, it is well settled that the plaintiff must recover, if at all, upon proof of these acts. *Wylie v. Meyers* (1958), 238 Ind. 385, 150 N.E.2d 887. *Bodine v. Justice* (1949), 119 Ind.App. 393, 85 N.E.2d 504.

"The giving of an instruction on an issue not supported by the evidence is erroneous; and, 'It is fundamental that instructions to the jury must follow the evidence, and be limited to an exposition of the legal effect upon the issues on trial of the relevant facts before the jury for determination.' *New York Central Railroad Company v. Knoll* (1965), 140 Ind.App. 264, 204 N.E.2d 220, 222, and cases cited therein.

\* \* \* \* \* \*

"There is no explanation of the applicability of the quoted statute to the facts of the case, nor can there be any. Further, when read in conjunction with Instruction No. 1, it is our view that the jury could have easily been misled into the false assumption that appellant violated one or more statutory provisions.

"The giving of these instructions, which are clearly outside the scope of the relevant issuable facts, will be considered reversible error, unless it clearly appears that appellant has not been harmed by their giving. *Chicago & Eastern Illinois Ry. Co. v. Whipking* (1930), 96 Ind.App. 167, 170 N.E. 548, *New York Central Railroad Company v. Knoll, supra.*

"In other words, in order to reverse the decision below, it is only necessary for us to determine that the decision of the jury *may* have been based on the giving of the erroneous instructions. *DeHaven v. Helvie, by next friend* (1890), 126 Ind. 82, 25 N.E. 874. We cannot escape the conclusion that the jury was influenced by these erroneous instructions, and, that appellant was harmed thereby." (Emphasis in the original.) 141 Ind.App. at 179–80, 226 N.E.2d at 907.

In *Board of Commissioners v. Klepinger,* 149 Ind.App. 377, 273 N.E.2d 109 (1971), a personal injury case, most nearly applicable to the issue under consideration in the present case, the reviewing court had before it claimed error in the giving of Instruction No. 8 which set forth a statute pertaining to the county commissioners' closing unsafe highways. The instruction concluded as follows:

"If you find from a preponderance of the evidence that the defendant violated the statutes on the occasion in question and that the violation was without excuse or justification, such conduct would constitute negligence on the part of the defendant." 149 Ind.App. at 379, 273 N.E.2d at 111.

The court's language is worth extensive quotation because of its applicability to the present case:

"The instruction uses the word 'violation' which would indicate that there is some specific duty, specific act or requirement that is so defined and ascertainable as to be capable of being violated as a matter of law without referring to all of the evidence or circumstances surrounding the accident. An attempt to mitigate this impression in the instruction is made by using the words ' . . . such conduct would constitute negligence . . . .' A layman serving on a jury would not be able to determine whether a statute can be 'violated' as a matter of law without some further instructions and we find none. Certainly, we cannot assume that a layman on a jury appreciates the distinction between negligence and negligence per se without having the difference explained to him in a simple and comprehensible manner. *The word 'violate' is a strong and over-powering word when used in an instruction with a statute.* Unexplained, it can lead to confusion, misinterpretation and a misstatement of law." (Emphasis added.) 149 Ind. App. at 383, 273 N.E.2d at 113.

After observing that neither the evidence nor the pleadings indicated that the plaintiff was relying upon the quoted statute, the court's opinion in *Klepinger* then stated the following:

"The appellee-plaintiff's Instruction No. 8 fails the test of a proper instruction. It submits to the jury an issue upon a matter that was not within the pleadings and certainly not within the evidence placed before them. It informs the jury of nothing as to its application to the evidence. A juror being impressed with the submission of a statute by the court could well reason that since an accident had occurred, the statute must have been violated, although he doesn't have the remotest idea how such violation is applicable. A juror must assume that any statute given to him in an instruction by the court is a correct statement of the law and should be considered by him in determining and ascertaining the issues." 149 Ind.App. at 385–86, 273 N.E.2d at 114.

The court after quoting approvingly from *Summers v. Weyer, supra,* then concluded its opinion as follows:

" 'Instructing a jury is a most difficult and complex process. It is generally conceded that there has been an over emphasis placed upon the wording and defined meaning of instructions which far exceed their actual effect upon the jury.' *Hendrix v. Harbelis* (1967), 248 Ind. 619, 230 N.E.2d 315; see also *Perry v. Goss* (1970), 253 Ind. 603, 255 N.E.2d 923, 20 Ind.Dec. 433. *But this is not applicable to an instruction which uses as its main thrust the 'violation' of a statute. A statute cannot be reworded nor can its meaning be refined in an instruction. Its application can only be explained and interpreted. The statute stands as an enunciation of the State Legislature and as a law of the state. Instructions gain some degree of eminence by incorporating statutes. Extreme care must be taken to avoid misapplication of a statute to issues and evidence.*

"When all of the evidence has been presented and the trial is nearing its conclusion, an effort is made to 'refocus' the minds of the jurors so that the law may be properly applied to the issues and evidence. This 'refocusing of the mind' and reinforcement of some first impressions is done by the way of instructions to the jury.

"Incorporating general and abstract statutory language into an instruction without any correct statement of application is error and must be condemned. Misapplication of statutes is an unavoidable hazard for lawyers and courts alike. It is a hazard that should not be introduced into a jury trial by instructions. This is especially true where the statute has only a re-

mote relevance to the issues and evidence. *In the present case, the effect of Instruction Number 8 was to obscure the real issues and confuse and mislead the jury.*

*"Judgment reversed with instructions to grant appellant-defendant's motion for a new trial."* (Emphasis added.) 149 Ind.App. at 386–87, 273 N.E.2d at 115.

It is also of interest to note the concurrence in the opinion was unanimous by the other three judges on the panel, one of whom was Judge Sharp, the district court judge in the present case.

I can reach no conclusion other than that the giving of the instruction in the case at bar obscured the real issue of visibility and confused and misled the jury. The jury was given no guidance as to how a violation of this statute had any bearing on the disposition of the law suit. The members were simply told that the failure of the railroad to cut the weeds at the specified time could be evidence of negligence. This, is my opinion, requires reversal under the Indiana authorities.

While I am resting my dissent primarily on the error in instructing, two other aspects of the present appeal justify at least passing comment.

First, if it were not that it appears as a matter of practice there has developed a virtual judicial abandonment of recognition of damages as being so clearly excessive as to require at least a remittitur, it does appear to me that no reasonable justification can be advanced for the $325,000.00 verdict given to this 50 year old state policeman, who retired from service for a disability not caused by the railroad, who had a prior long, complicated history of back problems originating in 1967, whose hospital and medical bills were less than $4,000.00 and whose loss of pay was equally limited.

Other than stating that on the record the amount of the verdict was ridiculously excessive, I will not pursue the Quixotic course further on the subject of damages.[6]

Second, a question of uncertainty of Indiana law is created by the 1965 amendment to the statute dealing with extra-hazardous grade crossings:

"The public service commission of Indiana shall have the *exclusive power* and it shall be its duty, upon proper petition by any five (5) or more citizens of this state or the board of county commissioners of any county of this state to conduct a hearing to declare as dangerous or extrahazardous any grade crossing in this state which said commission shall find to be of such a character as that the safety of the users of such highway requires the installation of automatic train-activated warning signals or other crossing safety devices." Burns' Ind.Stats.Annot.— Code Ed. 8–6–7–1 [55–2012] (1973) (Emphasis added.)

The dictum in *Central Indiana Railway v. Anderson Banking Co.,* 252 Ind. 270, 247 N.E.2d 208 (1969), related to a cause of action accruing several years before the 1965 statutory amendment and the effect, if any, of the 1965 amendment was not addressed by Judge Arterburn. While it may well be that the pronouncements in *Central Indiana* will represent the law of Indiana notwithstanding the 1965 amendment when the issue is squarely presented to the Indiana courts, it has not been decided as of now. Since it is an issue which appears to arise periodically, it seemed to me that a wise course for this court to have taken would have been to certify the question to the Indiana Supreme Court pursuant to Section 33–2–4–1 of the Indiana statutes. My brothers of the majority did not deem this procedure necessary.

---

**6.** Unfortunately, the preparation of the entire dissent is probably a Quixotic exercise in view of the general disfavor in which diversity cases are judicially held. The likelihood of the case being considered significant enough to justify further judicial attention is minimal. Nevertheless, I felt that judicial integrity required me to elaborate on my views rather than pursuing the easier path of just noting a dissent.

1326

*Defendant's Deposition Exhibit 4*

ACCIDENT PHOTOGRAPHIC RECORD

B&D Form CJ-201
2-65
MADE IN USA

DEFENDANT'S
EXHIBIT
F
71 H 151

| DATE TAKEN | TIME | PHOTOGRAPHER | |
|---|---|---|---|
| September 26 1969 | 10:00 a.m. | G. J. Hesslau | |
| LOCATION | WEATHER | | HEIGHT OF LENS |
| Suman, Indiana | Clear | | 56 inches |

DESCRIPTION OF SCENE:

Camera located 30 feet south of first rail, showing a view to the east, direction from which train approached, for a distance of 1675 feet.

RAILROAD DIRECTIONS                    COMPASS DIRECTIONS:

