CENTRAL INDIANA RAILWAY CO. *v.* ANDERSON BANKING
CO., ADMIN. OF ESTATE OF JONES, ETC.

[No. 20,246. Filed May 12, 1969.]

*Wilbur F. Pell, Jr., Pell & Matchett,* Shelbyville, *Russell E. Stewart, Stewart & Austin,* of counsel, Anderson, for appellant.

*Howard S. Young, Jr., Thomas J. Young, H. Harold Soshnick, Paul T. Brenton,* Indianapolis, for appellees.

ARTERBURN, J.—This case comes to us on petition for rehearing upon a previous denial of transfer from the Appellate Court. See opinion of Appellate Court reported in 240 N. E. 2d 840.

The appellee, The Anderson Banking Company, as Administrator of the estate of James Edward Jones, brought this action against appellant, Central Indiana Railway, and American Transport Company as joint tort-feasors for damages caused by the alleged wrongful death of appellee's decedent, whose death resulted from a nighttime collision between a truck owned by American Transport and the side of the caboose of a train owned by Central Indiana Railway Company. A trial by jury resulted in a verdict for appellee-plaintiff and judgment was rendered accordingly. Appellant, Central Indiana Railway, appealed from the overruling of its motion for a new trial. The Appellate Court affirmed the trial court.

The driver of the truck did not appeal, but the railroad company did, on the ground that there was no negligence shown as to it. The trial court below gave an instruction to the effect that the jury could not consider whether or not the railroad had a duty to establish flashers at the crossing and put reflectors on the side of the cars. The Appellate

Court affirmed the trial court. The result of the Appellate Court affirming the trial court is correct, but certain language used by the Appellate Court in this opinion is erroneous, namely:

"Since it is not negligence in Indiana for a railroad not to equip its crossings with automatic signals or provide reflectors on the sides of its cars unless required to do so by the Public Service Commission, it is error for a court, when timely requested, to refuse to withdraw such allegations from the consideration of the jury. However, in the instant case, the court instructed the jury that the appellant had no duty to install flashers or reflectors to protect the traveling public and that such failure is no defense in so far as the defendant American Transport Company is concerned." (240 N. E. 2d, pp. 849, 850.)

The effect of this language was to admit that the trial court made a mistake by not withdrawing the issue of the railroad's alleged negligence in not providing flashers or reflectors to warn oncoming traffic, but to further say that the error was rendered harmless by the court's subsequent instruction that the railroad was under no duty to provide flashers or reflectors.

Four states, Pennsylvania, New York, West Virginia and Wisconsin, adhere to the minority view expressed by the Appellate Court that denies the jury the right to ascribe negligence to a railroad company for failure to warn oncoming traffic of the presence of a train on the crossing. The Indiana view is illustrated by *New York Central R. R. Co. v. Casey* (1938), 214 Ind. 464, 468, 14 N. E. 2d 714:

"There is no statute of this state requiring a railroad company, while its train, or any part thereof, is occupying a highway crossing, either in passing thereover or when standing thereon, to staion an employee at any such crossing to warn travelers on the highway that the road is obstructed by a locomotive, freight car, or other car, forming a part of such train, and no such duty is imposed by the common law, unless ordinary care would require that such action be taken . . . The primary purpose of signals, gates, other

devices, and of watchmen when required to be maintained at points where railroad tracks intersect highways, streets, etc., is to warn persons traveling on and over such ways that a train is approaching and to protect them from damage or injury likely to ensue if they attempt to use such crossing before the train passes thereover. Common knowledge and experience is sufficient to warn that the crossing cannot be used when already occupied, and the law does not require that information be given of an existing fact that ordinary observation will disclose." *Pennsylvania Railroad Co. v. Huss* (1933), 96 Ind. App. 71, 78, 180 N. E. 919, 921. See also *New York Central R. Co. v. Powell* (1943), 221 Ind. 321, 47 N. E. 2d 615.

The majority rule is given in 24 A.L.R. 2d 1169, 1170:

"The doctrine prevailing in most jurisdictions, as the later cases show, is that where there is evidence that the particular crossing, either because of its more or less permanent features or because of circumstances existing and affecting its use at the given time, was more than ordinarily hazardous, a question for the jury or the trier of facts is usually presented as to whether or not reasonable care on the part of the railroad required it to provide a flagman to warn of approaching trains.

"On the other hand, in the absence of evidence of more than ordinary hazard attending public use of the crossing, there is, according to the doctrine generally laid down, no basis for the contention that the railroad company was under any duty to provide a flagman."

Indiana has within the last few years showed a tendency to move away from the strict adherence to the minority view and toward the modern view. In *Budkiewicz v. Elgin, Joliet, and Eastern Ry Co.* (1958), 238 Ind. 535, 150 N. E. 2d 897, this Court stated the general rule that a driver of a car is not bound under an absolute rule to see every object of danger in or on the highway and could therefore recover from the railroad for damages incurred when a vehicle driven by him collided with a "cut of cars" standing on the railroad where it intersected the public highway. The concurring opinion construed the decision as placing railroads under the same duty to use due care as it placed upon motorists using the highways.

The reasons given for imposing the same duty on both were:

"The method (and speed) of travel on the highways has changed considerably over the last fifty years. The acts which are required to exercise due care by railroads, as well as by travelers on the highway, have changed as travel has changed from the horse-drawn vehicles on gravel roads to the faster-moving motor car on smooth paved roads. Likewise the method and means of signaling and warning of danger has improved during the years by the perfection of various automotive devices, lights, flares, reflectors and luminous paints to the extent that such uses are now reasonable, where previously they were not practical.

"In this age, regardless of any statute, it would be negligence at common law for anyone to leave a large, yet indistinguishable object on the traveled portion of a highway on a dark night (be it a motor vehicle or a railroad car), without warning other travelers of the deceptive condition. Whether or not such a condition existed as a result of an emergency and the injury occurred before the danger could be eliminated, is a matter of defense." *Budkiewicz v. Elgin, Joliet and Eastern Ry. Co., supra,* at 454, 546.

The next departure from strict adherence to the so-called "minority rule" was in the concurring-dissenting opinion to the case of *Tyler, etc. v. Chicago Eastern Ill. Ry.* (1960), 241 Ind. 463, 490, 173 N. E. 2d 314:

"Negligence is based upon the duty to use care and it consists of failure to exercise that degree of care which a person of ordinary prudence would exercise under like circumstances. It is to be measured in light of modern ways and means of life where danger can be reasonably anticipated and likewise reasonably avoided."

This departure was further amplified by the language on page 493:

"To say that a railroad can be held negligent for the dangerous condition of its highway crossing only in the event it violates a statute or order of the Public Service Commission is, in effect, exempting it from the common law rules of negligence that are applicable to all persons, including operators of motor vehicles. It is evident without citation of authorities that although motor vehicles have

statutes or regulations which control their operation and a violation of which may be held to be negligence, still there are other acts not covered by statutes or regulations for which an operator of a motor vehicle may be held liable under the common law of negligence. I feel the same principle applies to all persons alike, including railroads" (Citing authorities).

In light of the foregoing discussion the better rule to adopt is the "majority rule" which allows liability to be imposed absent a statutory requirement if the facts of the particular case are such as to give the railroad the duty to warn the traveling public of the extra-hazardous nature of the crossing. The question of the presence of an extra-hazardous crossing could be left to the jury's determination.

In the present case there was evidence introduced to show that the railroad crossing was at the bottom of a dip in the highway with the road sloping upwards to the south and north of the tracks, that the crossing was not illuminated in any way, and that two buildings obstructed the view of the crossing. This evidence is sufficient to allow the jury to determine that this crossing was dangerous to an extra-hazardous extent and to infer this knowledge to the railroad. *Applegate v. Chicago & N. W. Ry. Co.* (1948), 334 Ill. App. 141, 78 N. E. 2d 793; *Chesapeake & Ohio R. Co. v. Elk Refining Co.* (1950), CA 4th W. Va.), 186 F. 2d 30; *Tanzi v. New York Cent. R. Co.* (1951), 155 Ohio St. 149, 98 N. E. 2d 39, 24 A. L. R. 2d 1151.

There was also evidence introduced in this case that the appellant Railway Company's rules required that the engineer and fireman light five minute fuses prior to reaching this highway and drop them on the highway as the engine crossed it. Evidence was also introduced that the railroad provided the engineer and fireman with "a flashlight type light" with which they could warn motorists. The highway involved was a heavily travelled one and the train crew had on at least

one previous occasion put out flares. These rules were on file with the Public Service Commission, were posted on the bulletin board of the Railway Company and discussed at safety meetings.

We disapprove the language of the Appellate Court quoted above, yet since the judgment of the trial court is affirmed, we deny transfer, and the petition for rehearing thereon.

DeBruler, C. J., and Jackson and Givan, JJ., concur. Hunter, J., dissents with opinion.

### DISSENTING OPINION.

HUNTER, J.—I agree with the majority opinion that the better rule is to allow the jury to determine whether the appellant had a duty to use warning devices at its railroad crossings.

I dissent to a denial of transfer only because I believe that the testimony and exhibits showing that the railroad had installed automatic signals after the accident should not have been admitted. Furthermore, I do not believe that a subsequent instruction to the jury that they disregard this evidence in determining the appellant's negligence can realistically remove this factor from the subjective deliberations of the factfinders and thereby cure the original error. Evidence of improvements made subsequent to the accident to prevent a recurrence of a similar injury should not be admitted except when the relevance of such evidence outweighs its prejudicial impact to the jury. A contrary rule can only discourage a litigant from affecting meaningful measures to prevent future injuries until after its liability on the original accident has been finally determined. *Terre Haute & I. R. Co. v. Clem* (1890), 123 Ind. 15, 23 N. E. 965.

NOTE.—Reported in 247 N. E. 2d 208.