Jerome C. **HARTZLER**, Plaintiff-Appellee,

v.

The **CHESAPEAKE AND OHIO RAILWAY COMPANY**, Defendant-Appellant.

No. 17955.

United States Court of Appeals, Seventh Circuit.

Oct. 19, 1970.

Rehearing Denied Nov. 9, 1970.

. Russell J. Wildman, Peru, Ind., John H. Gobel, Gen. Counsel, Chicago, Ill., for defendant-appellant.

David B. Keller, Edward L. Murphy, Fort Wayne, Ind., for plaintiff-appellee; Livingston, Dildine, Haynie & Yoder, Fort Wayne, Ind., of counsel.

Before HASTINGS, Senior Circuit Judge, and KILEY and KERNER, Circuit Judges.

KERNER, Circuit Judge.

Defendant-appellant, Chesapeake and Ohio Railway Company (Railway), appeals from a jury award of $75,000 in favor of plaintiff-appellee, Jerome C. Hartzler, for injuries incurred when plaintiff's car collided with defendant's train which was stopped or moving slowly across an oblique public highway intersection. Jurisdiction is based on diversity of citizenship. We affirm the jury's finding for plaintiff and the award.

The parties, pursuant to a pre-trial order, stipulated that on the night of October 26, 1966, at approximately 9:15 o'clock, the plaintiff's automobile collided with the sixtieth car of defendant's train, a black coal car, where County Road 800E crossed a single set of defendant's railroad tracks. It was further stipulated that at this particular railroad crossing defendant had erected a single highway cross-arm sign approximately eleven feet high, but that

> [s]aid crossing sign was not visible to the traveling public, including plaintiff, approaching said crossing from the north when a train was standing on or passing over said crossing, [and] [t]hat there were no other signs, signals or warning devices installed, erected or painted on or near the intersection of said highway and defendant's tracks other than the aforesaid cross-arm sign.

The parties also stipulated

> [t]hat at said time and place, there were no lights at or near the crossing and plaintiff's was the only vehicle at or near the crossing and [t]hat at the

time of said collision there were no disc warning signs on either the north or south side of the crossing and there had been no such signs for at least two years prior to the accident, although such a sign did exist within eight years prior to said two-year period.

Plaintiff suffered retrograde amnesia, resulting from the accident, and was not able to testify to any facts that occurred during the period several days prior to the accident until several days after the accident. In the absence of eyewitnesses, much of plaintiff's case on liability was developed by two experts. Dr. J. Stannard Baker, a traffic engineer and Director of Research and Development at the Traffic Institute of Northwestern University, testified that as one approaches the crossing from the north "there is a definite slope downward" and this decreases the ability to stop upon application of the brakes. Dr. Baker further testified that based upon an examination of the scene, skid marks, photographs and his evaluation of damages to the coal car and automobile, he was of the opinion that Hartzler was traveling between 42 and 54 miles per hour at the time he applied the brakes (the speed limit on 800E was 65 mph). Dr. Baker then stated at the speed of 42 miles per hour, approaching a railroad track intersecting the highway at the the angle defendant's track intersected and having a grade similar to highway 800E, the point at which the driver could no longer avoid a collision would be 182 feet. This point of no escape, Dr. Baker stated, would increase to 275 feet if the driver were going 54 miles per hour.

The second expert testimony was given by John W. Mihelich, a professor of physics at Notre Dame. Professor Mihelich testified that in his opinion, a dark coal hopper, whether stopped or moving slowly, would be invisible at 150 feet.

My opinion is that with normal headlights, with reflection from the black-top, reflection off the coal train at an angle with respect to the highway, with it reflecting back from the train into the eye, with there being no sharp features to outline the train, such as, say, perhaps a light background, that in all likelihood, the train would be below the level of perception for a distance fairly close beyond the range of the headlights striking the pavement, and I would venture to guess that at 150 feet that train would be invisible, if it's truly black with no background.

Both experts' opinions indicate that plaintiff did not see the train until it was too late to avoid a collision.

Defendant-appellant Railway contends that since it violated no statutory duty towards plaintiff, it was error to allow the jury to determine liability based on the common law rules of negligence, because under Indiana law common law negligence does not apply to a railroad where it occupies a crossing and there is a collision. While we agree defendant violated no statutory duty, we disagree that common law negligence rules are inapplicable.

■■ Since our jurisdiction is based on diversity of citizenship, we apply the law of Indiana as interpreted by its highest court. The latest pronouncement of the Indiana Supreme Court concerning the applicability of common law negligence rules to collisions at railroad crossing was made in the recent case of Central Indiana Ry. Co. v. Anderson Banking Co., Ind., 247 N.E.2d 208 (1969). The court in *Central Indiana* recognized that prior Indiana law had adopted the minority view, that a railroad had no duty under any circumstances to warn the public of the presence of a train on a crossing. The court then stated the majority rule:

The doctrine prevailing in most jurisdictions, as the later cases show, is that where there is evidence that the particular crossing, either because of its more or less permanent features or because of circumstances existing and affecting its use at the given time, was more than ordinarily hazardous, a question for the jury or the trier of facts is usually presented as to

whether or not reasonable care on the part of the railroad required it to provide a flagman to warn of approaching trains.

On the other hand, in the absence of evidence of more than ordinary hazard attending public use of the crossing, there is, according to the doctrine generally laid down, no basis for the contention that the railroad company was under any duty to provide a flagman.

and stated that "Indiana has within the last few years showed a tendency to move away from the strict adherence to the minority view and toward the modern view," *Id.* at 210, citing Budkiewicz v. Elgin, Joliet and Eastern Ry. Co., 238 Ind. 535, 150 N.E.2d 897 (1958), and a concurring-dissenting opinion in Tyler v. Chicago-Eastern Illinois Railway, 241 Ind. 463, 490, 173 N.E.2d 314, 326 (1961). The Indiana Supreme Court, taking cognizance of the increase and development in automobile travel, clearly indicated its preference for the majority position:

> In light of the foregoing discussion, the better rule to adopt is the "Majority Rule" which allows liability to be imposed absent a statutory requirement if the facts of the particular case are such as to give the railroad the duty to warn the traveling public of the extra-hazardous nature of the crossing. The question of the presence of an extra-hazardous crossing could be left to the jury's determination.

Central Indiana Ry. Co. v. Anderson Banking Co., 247 N.E.2d at 211.

The pronouncements in *Central Indiana,* while dicta and not essential to the disposition of that case,[1] nevertheless indicate the highest court of the state's interpretation of the law in this area, and we, sitting as another court of that state, follow that interpretation as the substantive law of Indiana. See *e.g.,*

Allstate Insurance Co. v. Charneski, 286 F.2d 238, 244 (7th Cir. 1960).

In the application of a state statute, the federal courts are, of course, bound by the construction made by the courts of the state. Senn v. Tile Layers Union, 301 U.S. 468, 57 S.Ct. 857, 81 L.Ed. 1229. And the obligation to accept local interpretation extends not merely to definitive decisions, but to considered dicta as well. Hawks v. Hamill, 288 U.S. 52, 53 S.Ct. 240, 77 L.Ed. 610; Badger v. Hoidale, 8 Cir., 88 F.2d 208, 109 A.L.R. 798. Indeed, under the implications of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, and West v. American Telephone and Telegraph Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139, where direct expression by an authorized state tribunal is lacking, it is the duty of the federal court, in dealing with matters of either common law or statute, to have regard for any persuasive data that is available, such as compelling inferences or logical implications from other related adjudications and considered pronouncements. The responsibility of the federal courts, in matters of local law, is not to formulate the legal mind of the state, but merely to ascertain and apply it. Any convincing manifestation of local law, having a clear root in judicial conscience and responsibility, whether resting in direct expression or obvious implication and inference, should accordingly be given appropriate heed.

Yoder v. Nu-Enamel, 117 F.2d 488, 489 (8th Cir. 1941).

Reviewing the facts of the instant case, we hold that the judge did not err in allowing the jury to decide whether the railroad crossing was extra-hazardous. There was sufficient evidence to consider whether the oblique crossing was extra-hazardous because of

---

1. The railroad sought to have the State Supreme Court accept transfer of the case from the appellate court. The court denied transfer, even though it disagreed with the appellate court that the question of negligence should be withdrawn from the jury, since the appellate court had affirmed the trial court's finding in favor of the plaintiff-appellee.

the absence of an advance warning sign or other signals and lights at the crossing and the fact that the train blocked a sloping crossing in the black of night. As the Indiana Supreme Court stated in *Central Indiana Ry.*:

> In the present case there was evidence introduced that the railroad crossing was at the bottom of a dip in the highway with the road sloping upwards to the south and north of the tracks, that the crossing was not illuminated in any way and that two buildings obstructed the view of the crossing. This evidence is sufficient to allow the jury to determine that the crossing was dangerous to an extra-hazardous extent and to infer this knowledge to the railroad. Appelgate v. Chicago & N.W. Ry. Co. (1948), 334 Ill.App. 141, 78 N.E.2d 793; Chesapeake & Ohio R. Co. v. Elk Refining Co. (1950, C.A. 4th W.Va.), 186 F.2d 301; Tanzi v. New York Cent. R. Co. (1951), 155 Ohio St. 149, 98 N.E.2d 39, 24 A.L.R.2d 1151.

247 N.E.2d at 211.

■ In addition, the verdict was not based on impermissible speculation and inferences, as the appellant contends. The finding of negligence has ample support in the record concerning the extra-hazardous nature of the crossing and the testimony of the plaintiff's two expert witnesses, who believed plaintiff did not see the train in time to avoid the accident under the existent conditions. Although there were no eyewitnesses to the collision, negligence can be proved by circumstantial evidence. See *e.g.*, Great Atlantic & Pacific Tea Co. v. McNew, 99 Ind.App. 229, 189 N.E. 641 (1934), and we find our decisions in Foster v. N. Y. C. System, 402 F.2d 312 (7th Cir. 1968), and Iwaniuk, Admr. v. Bethlehem Steel Corp., 402 F.2d 309 (7th Cir. 1968), holding jury speculation improper, distinguishable because they were based on non-analogous fact situations which did not have the benefit of expert testimony.

■ Defendant Railway also alleges as error the admission of the expert testimony of Dr. Baker and Professor Mihelich as opinion evidence which invaded the province of the jury. Under either Indiana law, see *e.g.*, Lengyel v. Hecht, Ind.App., 242 N.E.2d 135, 137–39 (1969), or federal law, see *e.g.*, Salem v. U. S. Lines, 370 U.S. 31, 35, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962), the determination of the admissibility of expert testimony is left to the broad discretion of the trial judge. We find that the testimony of the expert witnesses did not invade the province of the jury, and the trial judge did not abuse his discretion by receiving the expert testimony into evidence.

■ Appellant's last allegation of error is directed at several of its instructions which were refused by the trial judge. Two instructions refused by the court would have withdrawn the issue of defendant's statutory negligence from the jury's consideration. Although these two instructions were refused, the trial judge did give an instruction to the jury which stated: "I instruct you that there is no evidence upon which you may find that the defendant violated a statutory duty which it owed to plaintiff." Consequently, it was not error to refuse to give the two instructions dealing with statutory negligence since the subject matter of the refused instruction was covered by instructions which were given. See *e.g.*, Central Indiana Ry. Co. v. Wishard, 186 Ind. 262, 114 N.E. 970, 973 (1917); see also Alford v. New York Central R. Co., 339 F.2d 1019, 1021 (7th Cir. 1964).

■ The other set of refused instructions would have informed the jury to disregard evidence concerning the absence of signs, signals and other warning devices at the crossing in determining whether the defendant was negligent. As we have stated, pursuant to the *Central Indiana Ry.* case, the question of the presence of signs, signals and

other warning devices is relevant along with other factors, in a jury's determination of whether a crossing is ultra-hazardous.

For the foregoing reasons, the decision of the district court is affirmed.

Affirmed.