**Richard JOHNSON and Catherine Johnson, Plaintiffs-Appellees,**

v.

**CONSOLIDATED RAIL CORPORATION, Defendant-Appellant.**

**No. 85–1657.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 19, 1986.

Decided Aug. 4, 1986.

Edward A. Chapleau, Chapleau Farabaugh & Wozniak, South Bend, Ind., for defendant-appellant.

Paul B. Kusbach, South Bend, Ind., for plaintiffs-appellees.

Before CUMMINGS, Chief Judge, COFFEY, Circuit Judge, and WILL, Senior District Judge.[*]

WILL, Senior District Judge.

A jury awarded plaintiff-appellee Richard Johnson ("Johnson") $150,000 on a general verdict for injuries sustained as a result of a collision between his snowplow truck and a train belonging to defendant-appellant Consolidated Rail Corporation ("Consolidated"). In addition, his wife, Catherine Johnson, was awarded $35,000 for loss of consortium. Given the questions presented to the jury at the close of trial, the verdicts must represent a finding that Consolidated either (1) negligently operated its train, or (2) negligently maintained an extra-hazardous crossing. Furthermore, the jury must have found that Johnson's actions either (1) did not amount to contributory negligence because they were reasonable under the circumstances, or (2) were not the proximate cause of his injuries because Consol-

---

[*] The Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation.

idated had the last clear chance to avoid the accident.

There are no relevant points of law in dispute. Consolidated raises, however, a number of issues concerning the sufficiency of the evidence and the submission or failure to submit certain instructions to the jury. In addition, Consolidated challenges the admission of certain expert testimony and the size of the damage awards. We hold that the jury verdict is supported by the evidence; that each of the challenged jury instructions was appropriate in light of the evidence; that the admission of expert testimony was proper; and that the damage awards were not excessive. Accordingly, we affirm.

## I. *Background*

Johnson was injured at 1:00 a.m. on January 10, 1981 by a collision between his snowplow truck, which was headed north over a railroad crossing, and Consolidated's train, which was headed west through the crossing. Immediately prior to the collision, the train had traveled over a river on a 337–foot unlighted trestle bridge ending 25 feet east of the crossing. Although the trestle was not lit, the crossing was illuminated by two mercury vapor lamps flanking the rails as well as a flood light located 118 feet to the west. No mechanical warning devices were in place to warn of an approaching train, the ground was covered with snow and it was a cold, windy night.

Johnson testified that he was familiar with the crossing. On the night of the accident, he stated, he approached the crossing at about 5 miles per hour. He stopped his truck 10 feet before the nearest track, leaving his plow blade, which extended in front of the truck, close to the nearest rail. Before crossing, he looked to the right three times. Although he saw lights emanating from the apartment complex located to the east across the river, he did not see or hear any evidence of the train's approach. Then, as he began to move across the tracks, he saw a light fall across his plow blade. Because he initially believed this light to be caused by a lamp post "or something" that was falling beside him, he accelerated forward. Suddenly a burst of light hit the cab and passed on, revealing, as he reached mid-track, the outline of the onrushing train.

Although Johnson testified that he could not see the train or its headlight and did not hear its bell or whistle as it moved across the bridge toward the crossing, the train crew testified that they had seen the truck. The engineer stated that it was approaching at 15–20 miles per hour from approximately 215 feet south of the crossing, while the train was moving 7–10 miles per hour from mid-bridge approximately 195 feet east of the crossing. Furthermore, they stated that the whistle was blowing and the bell was ringing, although Johnson's supervisor testified that Johnson's truck was so noisy that a car's horn blowing next to the truck was often inaudible. A crew member also testified that there was some discussion as to whether the truck was going to stop, but when they realized that it was not, the engineer applied the emergency brakes. At that point the train was between the bridge and the crossing (a distance of less than 25 feet), and the truck was approximately one length back from the crossing.

Two expert witnesses testified for Johnson. The first, a physics professor and a member of the Air Brake Association, was put on to demonstrate that the train was negligently operated due to its speed. He concluded that such a train moving 8–10 miles per hour, as crew members testified, would take 45–95 feet to stop. According to the accounts of various other witnesses, however, the train pushed the truck 100 to 175 feet down the track before both came to a stop, suggesting either that the brakes were not applied or that the train was traveling considerably faster than its 10 mile per hour speed limit. The second expert, a human factors expert, was put on to demonstrate that Johnson was not contributorily negligent in crossing the tracks because the train's headlamp was not visible to him. The expert testified that the train's headlight cast a conical beam which, because of the angle of the track to the

road, would not have reached far enough south to shine on the truck's cab unless the train were more than 400 feet away. Thus, Johnson was not warned of the imminent approach of the train.

Medical testimony demonstrated that the collision aggravated Johnson's pre-existing arthritic knee condition and psychological testimony demonstrated that the collision caused post-traumatic disorders including depression, insomnia, suicidal thoughts, reduced sex drive, and poor eating habits. Johnson claimed that he was no longer able to work, had lost $54,000 in wages up to the time of trial, and would lose an indefinite amount more in the future. Moreover, he had accumulated $22,000 in medical bills and claimed to need further psychotherapy. Lay witnesses described Johnson as having been active and enthusiastic before the collision, but withdrawn and depressed after it. In addition, Johnson's wife testified that he no longer worked around the house and was antisocial.

## II. Sufficiency of the Evidence

Consolidated argues that Johnson was contributorily negligent as a matter of law. A plaintiff is contributorily negligent if he fails to exercise that degree of care that an ordinary reasonable person would exercise in like or similar circumstances. *Memorial Hospital of South Bend, Inc. v. Scott*, 261 Ind. 27, 36, 300 N.E.2d 50, 56 (1973). When a plaintiff is guilty of contributory negligence as a matter of law, he cannot recover on his claim, and the trial court must enter judgment for the defendant. *Gasich v. Chesapeake & Ohio R.R. Co.*, 453 N.E.2d 371, 374 (Ind.App.1983).

The standard of care applicable to a driver approaching a train crossing is defined by Ind.Code § 9-4-1-106. This section requires a driver to stop 10–50 feet before the nearest rail and remain stopped until he can proceed safely. It is triggered when the following conditions pertinent to this case arise:

1) a train is approaching within 1500 feet emitting a signal audible for that distance and constitutes an immediate hazard, and

2) an approaching train is plainly visible and in hazardous proximity to the crossing.

Consolidated maintains that Johnson breached his duty to remain stopped and was therefore contributorily negligent by moving across the tracks before he could proceed safely.

According to Consolidated, Johnson's own testimony leaves this court no choice but to find him contributorily negligent as a matter of law. First, Johnson stated that he saw a light reflected off his plow blade. To Consolidated, this light constituted such "clear uncontradicted evidence" of a train's approach that Johnson had a duty to remain stopped until he could proceed safely. Second, Johnson argued that, due to the dark of night, the poor weather conditions, and the profusion of lights in the area (from the apartment complex across the river and the various lamp posts near the crossing), the train was not plainly visible. Again, Consolidated interprets this testimony as creating a duty in Johnson to remain stopped until he could see whether it was possible to proceed safely. Third, Johnson stated that he did not hear or see the train coming. In Consolidated's opinion, this testimony, coupled with the evidence of the slow speed of the train and the truck, proves that Johnson could not have exercised ordinary care.

■ Although Consolidated postulates a number of inferences that could be drawn from the evidence, Indiana law is clear that contributory negligence may be established as a matter of law only if "the *only* reasonable conclusion to be drawn from the evidence is that the plaintiff was contributorily negligent." *Gasich*, 453 N.E.2d at 374 (emphasis added). In the present case, the inferences urged upon us by Consolidated do not meet this standard. First, although Consolidated assumes that the light reflecting off Johnson's plow blade was clear evidence that a train was approaching, Johnson explained that he thought it emanated from a falling light post; he therefore accelerated to avoid what he perceived to be the danger. Under

the circumstances, the jury may have believed that Johnson's conduct was reasonable. Second, although Consolidated assumes that the poor visibility in the area should have alerted Johnson to the possibility that he could not see something that was there, Johnson may reasonably have believed that there was simply nothing to see. This conclusion is strengthened by the fact that he *could* see across the river to the apartment complex. Third, although Consolidated assumes that the train was plainly visible and audible, Johnson testified that he could not hear the bell or whistle, and expert testimony suggested that he would not have been able to see the engine's headlamp, given the beam cast by the headlamp, the geography, the weather and lighting conditions. We do not think the testimony of Johnson and his experts was so inherently incredible that a jury could not rely upon it.

Finally, the parties disagree as to whether contributory negligence ever may be presumed. Consolidated cites *Gasich*, 453 N.E.2d at 375, for the proposition that if a train is visible and audible, and a collision occurs, the plaintiff is presumed either not to have looked and listened, or not to have heeded what he saw and heard; in either event, he would be contributorily negligent as a matter of law. Johnson, on the other hand, cites *Consolidated Rail Corp. v. Thomas*, 463 N.E.2d 315, 320–21 (Ind.App. 1984) (criticizing *Gasich*) and *New York Central R.R. Co. v. Wyatt*, 135 Ind.App. 205, 184 N.E.2d 657 (Ind.App.1962), for the proposition that contributory negligence never may be presumed. Because we find that Consolidated did not establish that the train was plainly visible or audible, we need not resolve this possible conflict in the Indiana law.

In sum, because there were conflicting inferences to be drawn from the evidence, the issue of contributory negligence was justifiably placed before the jury to be resolved as it saw fit.

### III. *Jury Instructions*

Consolidated maintains that there was insufficient evidence to justify giving the jury certain instructions on contributory negligence. The submission of these instructions, Consolidated argues, constitutes reversible error because they improperly afforded the jury the opportunity to find either that Johnson was not negligent, or that his negligence was legally excused.

Instruction No. 31 directed the jury to find the railroad negligent if (1) the crossing was extra-hazardous, (2) the railroad was aware of the condition, and (3) the railroad failed to warn the public that the crossing was extra-hazardous. *See Central Indiana Ry. Co. v. Anderson Banking Co.*, 252 Ind. 270, 275, 247 N.E.2d 208, 211 (1969). An extra-hazardous crossing was defined as "one which is so peculiarly dangerous that a person in the exercise of ordinary prudence cannot use it with safety."

Although there is no dispute as to the accuracy of the law embodied in Instruction No. 31, Consolidated argues that there was insufficient evidence to justify submission of this issue to the jury. In Consolidated's view, it cannot be held responsible for the weather conditions existing at the time of the accident. Since the jury was presented with alternative theories to explain Johnson's obstructed vision, however, we need not decide whether temporary conditions such as weather may cause a railroad crossing to become extra-hazardous. *Cf. id.* at 273, 247 N.E.2d at 210 (considerations in determining whether crossing is extra-hazardous include crossing's "more or less permanent features ... [and] circumstances existing and affecting its use at the given time."). For example, the jury could have inferred from various witnesses' testimony that the permanent lighting conditions at the crossing and trestle confronted approaching drivers with a confusing or blinding picture. There was also evidence that the train may have been obscured by untrimmed growths along the railroad's right of way. It is undisputed that notwithstanding those facts no electrical or mechanical warning devices were provided to signal the approach of a train.

Consolidated notes that Johnson was familiar with the crossing and aware that a train could be approaching and that he actually stopped to look for a train. In such circumstances, Consolidated contends, warnings in addition to the crossbuck signs and pavement markings already present at the crossing would have been fruitless.

■ If a crossing is extra-hazardous, however, a railroad's duty to warn does not end with the installation of passive warnings that alert the public to the existence of a crossing. *See Johnson v. Baltimore & Ohio R.R. Co.*, 65 F.R.D. 661, 670–72 (N.D. Ind.1974), *aff'd*, 528 F.2d 1313 (7th Cir. 1976). Rather, the conditions may require the installation of active warnings which alert the public to the existence of an oncoming train. Because such active warnings as flashing lights or a descending gate were not present, the jury could have concluded that the railroad had not fulfilled its duty to ensure the safety of its crossings. And since there was evidence that Johnson acted reasonably under the circumstances, we think the jury could have concluded that active warnings would have succeeded where lesser measures failed in alerting him to the presence of an oncoming train. As such, the issue of extra-hazardous crossing was properly before the jury.

■ Instruction No. 33 informed the jury that a person confronted with a sudden emergency not of his making is not held to the same accuracy of judgment as he would be if he had time for deliberation. *See Taylor v. Todd*, 439 N.E.2d 190 (Ind. App.1982). Thus, the jury was permitted to find that although Johnson's actions under other circumstances might have amounted to contributory negligence, under the circumstances existing at the time of the collision they did not. Although Johnson never directly testified that he perceived himself to be in an emergency situation, he did testify that he thought a light post was falling. From this testimony, the jury could have inferred that Johnson thought he was in imminent danger and that his actions were reasonable under the circumstances. Accordingly, the issue of sudden emergency was properly before the jury.

Consolidated also objects to Instruction No. 25A, which directed the jury that any contributory negligence on the part of Johnson could be excused if Consolidated were shown to have had the "last clear chance" to avoid the collision, but negligently failed to do so. *See Gasich*, 453 N.E.2d at 376–78. According to Consolidated, the engineer's testimony that the train was within 25 feet of the crossing before he realized that the truck was moving across the tracks, taken in conjunction with Johnson's expert's testimony that a train traveling at a speed of only 7 miles per hour would require 45–55 feet in which to stop, establishes that the engineer did not have the last clear chance to avert the collision.

■ The jury, however, was not obligated to believe the testimony of the engineer as to where the train was positioned or as to its speed when he realized that Johnson's truck was moving across the tracks. Further, as discussed earlier, there was evidence from which the jury could infer that the train was moving considerably faster than 10 miles per hour or that the brakes were not applied. In short, there was sufficient evidence that the engineer could have applied the brakes in time to avoid the collision to justify the submission of an instruction on the last clear chance doctrine.

Finally, Consolidated objects to the giving of Instruction No. 32. This instruction informed the jury that the violation of a safety statute (such as Ind.Code § 9–4–1–106, discussed above) is presumed negligent; but the plaintiff may rebut the presumption by "showing that the act might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law." Consolidated's argument against submission of this instruction is virtually identical to its arguments concerning Johnson's alleged contributory negligence as a matter of law. As discussed above, there was evidence submitted that Johnson acted

reasonably. Thus, this instruction was properly submitted.

In sum, although there was evidence in Consolidated's favor on each of the above-mentioned issues, there was sufficient evidence in Johnson's favor to permit submission of the instructions to the jury as the finder of fact.

 Consolidated also objects to the district court's refusal to submit three of its tendered instructions. First, Consolidated wished to submit a statement to the jury that contributory negligence is a complete defense regardless of any negligence by the defendant; this statement, however, is covered by Instruction No. 25A regarding last clear chance. Second, Consolidated wished to submit a statement that there is no statutory duty to place a flagman at a crossing; this statement, however, is basically conveyed by Instruction No. 31 regarding extra-hazardous crossings ("no statutory duty to install gates of flashing lights," which are even lesser measures than flagmen). Finally, Consolidated wished to submit a statement concerning the presumption of contributory negligence; we cannot say, however, that the refusal to give such an instruction was error, given the conflict among Indiana courts as to whether contributory negligence may ever be presumed. Moreover, we are obliged to give substantial weight to determinations of state law made by a federal district judge who sits in that state. *Palace Entertainment, Inc. v. Bituminous Casualty Corp.*, 793 F.2d 842, 846 (7th Cir.1986); *Afram Export Corp. v. Metallurgiki Halyps, S.A.*, 772 F.2d 1358, 1370 (7th Cir.1985). Accordingly, we find no error in the district court's refusal to instruct the jury on a presumption of contributory negligence.

### IV. *Damages*

This court may set aside the jury verdict of $150,000 to Richard Johnson and $35,000 to his wife, Catherine, only if it is grossly excessive. *Abernathy v. Superior Hardwoods, Inc.*, 704 F.2d 963 (7th Cir.1983); *State v. Daley*, 153 Ind.App. 330, 339, 287

N.E.2d 552, 557 (Ind.App.1972). Consolidated contends that this verdict was grossly excessive for a number of reasons: (1) Johnson suffered knee and psychological damage before the collision; (2) a surgeon testified that Johnson could return to work two weeks after the collision; (3) Johnson's medical expenses incurred after the collision were due in part to Johnson's preexisting condition; (4) Johnson's surgeon testified that no permanent injury was sustained by the knee as a result of the collision; (5) there was no evidence of what expenses Johnson might incur in the future; and (6) there was no pecuniary value attached to the services that Johnson allegedly could no longer perform for his wife. In light of this evidence, Consolidated contends that the magnitude of the verdict can be explained only by assuming that the jury was improperly motivated by emotion or sympathy for Johnson.

 Damages are largely discretionary with the jury, *Galard v. Johnson*, 504 F.2d 1198 (7th Cir.1974), and need not be broken down and attributed piece by piece to particular injuries. Rather, a verdict "will be upheld if it is within the scope of the evidence presented." *Board of Commissioner of Cass County v. Nevitt*, 448 N.E.2d 333, 344 (Ind.App.1983). In this case there was evidence to support the substantial verdict awarded. For example, Johnson was described as active and enthusiastic before the collision but withdrawn and depressed after, conditions attributed by testifying psychologists to the accident. In addition, Johnson's surgeon testified that his preexisting knee condition was aggravated by the collision. Thus, the jury acted within its discretion and the award should stand.

### V. *Expert Testimony*

 Consolidated contends that both the human factors expert, who testified about the likelihood of Johnson's seeing the train light, and the braking expert, who testified about the distance required for the train to stop at various speeds, were impermissibly allowed to base their opinions on

hearsay information. Federal Rule of Evidence 703 permits expert testimony which relies on inadmissible evidence provided it is of a type reasonably relied on by experts in the particular field. Because Consolidated has not argued in its briefs that the materials used by the experts are not reasonably relied upon in their fields, we assume that they are; therefore the district court properly allowed the testimony.

For the above reasons, the district court's judgment is AFFIRMED.