Loretta Y. JACKSON, Plaintiff–Appellee
and Cross–Appellant,

v.

POOL MORTGAGE COMPANY, an
Oklahoma Corporation, Defendant–Appellant and Cross–Appellee.

Nos. 87–1361, 87–1363.

United States Court of Appeals,
Tenth Circuit.

Feb. 28, 1989.

Harvey L. Harmon, Sr. of Kornfeld, Franklin & Phillips, Oklahoma City, Okl., for defendant-appellant and cross-appellee.

Donald W. Davis, Oklahoma City, Okl., for plaintiff-appellee and cross-appellant.

Before McKAY, SEYMOUR, and EBEL, Circuit Judges.

EBEL, Circuit Judge.

This employment discrimination case raises two issues: (1) whether the damage award was excessive because it exceeded statutory limitations on backpay awards; and (2) whether the district court properly vacated the jury's award of punitive damages.[1]

The underlying facts are as follows. Defendant Pool Mortgage Company, an Okla-

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R. App.P. 34; 10th Cir.R. 34.1.9. Therefore, the cause is ordered submitted without oral argument.

homa Corporation, hired plaintiff Loretta Jackson, a black female, in 1967. In 1969 she took a leave of absence but resumed her employment with Pool from 1971 until her termination on July 19, 1984. On September 7, 1984, plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging sexual and racial discrimination. The EEOC subsequently gave her notice of a right to sue, and on July 11, 1985, she brought suit in the United States District Court for the Western District of Oklahoma claiming that the defendant had engaged in sexual and racial discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981.[2]

At trial, the jury rejected plaintiff's claim of sexual discrimination. However, the jury found that plaintiff was discriminated against on the basis of her race in violation of both Title VII and Section 1981.[3] The jury awarded plaintiff $74,146 in actual damages under Section 1981 and recommended the same amount as actual damages under Title VII. The jury also awarded plaintiff $25,000 in punitive damages under Section 1981. The district court entered judgment accordingly. Defendant then moved for judgment notwithstanding the verdict or in the alternative for a new trial or remittitur of damages. The district court affirmed the judgment for plaintiff for $74,146 in actual damages but vacated the award of punitive damages.

On appeal, defendant argues that the actual damage award was excessive as a matter of law because it exceeded the limits on backpay liability applicable to Title VII and Section 1981. Plaintiff argues in her cross-appeal that the trial judge erred in vacating the jury's award of punitive damages.

I.

## LIMITS ON BACKPAY

Defendant contends that the district court erred in refusing to grant remittitur of damages because the actual damage award of $74,146 is excessive as a matter of law. Defendant attributes the entire amount of the damage award to backpay, and it then asserts that the damage award exceeds limits on backpay applicable to Title VII and Section 1981.

We recognize that Title VII limits recovery of backpay to no more than two years prior to the filing of the discrimination charge with the EEOC, 42 U.S.C. § 2000e–5(g), and that backpay liability under Section 1981 may be limited by an appropriate state statute of limitations, *see, e.g., Kornegay v. Burlington Industries, Inc.,* 803 F.2d 787, 788 (4th Cir.1986). However, we do not reach the issue of whether the damage award here exceeds the limits on backpay liability because we do not agree with defendant that the damage award necessarily was based solely on backpay.

**2.** On her Title VII claim, plaintiff specifically alleged that defendant violated 42 U.S.C. § 2000e–2(a), which provides:
(a) It shall be an unlawful employment practice for an employer—
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.
Section 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

**3.** Because plaintiff was not entitled to a jury on her Title VII claim, *see Lehman v. Nakshian,* 453 U.S. 156, 164, 101 S.Ct. 2698, 2703, 69 L.Ed.2d 548 (1981); *Great American Federal Savings & Loan Ass'n v. Novotny,* 442 U.S. 366, 375, 99 S.Ct. 2345, 2350, 60 L.Ed.2d 957 (1979), the trial judge had the jury fill out advisory interrogatories rather than a verdict form.

■ In arguing that the actual damage award was based exclusively on plaintiff's lost backpay, defendant relies on plaintiff's trial Exhibit 9, which sets forth the difference between plaintiff's actual wages and the wages she should have received from 1968 to 1987. According to the exhibit, which was prepared by an expert in rates of pay, the total amount of lost wages since 1968 was $74,146. That is the precise amount, to the dollar, of the actual damages awarded by the jury in this case. Therefore, defendant infers that the jury necessarily must have based its actual damage award solely on plaintiff's lost backpay reflected on Exhibit 9. We disagree.

Defendant concedes that the jury properly could have awarded plaintiff $49,725 in damages for backpay. (Appellant's Br. at p. 6.) Our review of the record convinces us that the remaining $24,421 (the difference between the actual damage award here and the $49,725 that defendant concedes could be attributed properly to backpay) is supported by evidence of other damages presented at trial.

Initially, we note that the jurors were instructed that backpay was only one element of the damages that they could award under Section 1981:

> If you find from the evidence that the defendant terminated the plaintiff on the basis of her race, then you may award her reasonable compensation for her financial losses and any pain, suffering and physical and emotional distress. If you find the defendant acted in a manner which violated the plaintiff's rights under Section 1981, you may award damages to compensate her for this violation, including any back pay to which the plaintiff may be entitled to receive.

(Instruction No. 10.)

The trial transcript reveals that plaintiff in fact introduced evidence of damages other than lost pay. Plaintiff and a doctor testified about physical problems that plaintiff developed after her termination including depression, headaches, muscle spasms, stomach pains, and hair loss. (Tr. at 71–72, 148.) Plaintiff also testified that she was on medication and had already spent nearly $3,000 for medical expenses. (Tr. at 74.) In addition, the doctor testified that future medical costs could amount to $27,000. (Tr. at 149.)

The evidence summarized above is sufficient to support the portion of the damage award that defendant contends could not properly be based on backpay. Here, where there was a general verdict, damages "need not be broken down and attributed piece by piece to particular injuries. Rather, a verdict 'will be upheld if it is within the scope of the evidence presented.'" *Johnson v. Consolidated Rail Corp.*, 797 F.2d 1440, 1446 (7th Cir.1986) (quoting *Board of Commissioners of Cass County v. Nevitt*, 448 N.E.2d 333, 344 (Ind. App.1983)). *See also Whiteley v. OKC Corp.*, 719 F.2d 1051, 1058 (10th Cir.1983) ("[T]he jury's verdict need by supported only by any evidence tending to sustain it.... As the reviewing court, we must view the evidence in the light most favorable to the prevailing party.").

Defendant also relies on a statement by the trial judge to the jury to support its argument that the jury awarded only lost backpay. During the jury's deliberations, the jury asked the judge whether it should award the same amount of damages for a violation of Title VII as for a violation of Section 1981. The judge informed the jury that it should award the same amount of damages for both violations:

> THE COURT: All right, ladies and gentlemen. I have your note, which reads as follows: "Please explain. Do we put same amount on question No. 4 as we do on No. 6? Signed J. Laquement," your Foreman.
>
> Your answer to that is "yes." Let me take a minute to explain. Although conduct may violate two separate provisions of the law, there is a single injury and it would be the same—the injury would be the same—or the amount of damages would be the same regardless of which section is violated or if both are violated.

(Tr. at 399–400.)

Although the judge's response was not correct because additional types of damages can be recovered under Section 1981

that are not recoverable under Title VII,[4] we do not believe that the judge's statement leads to the conclusion that the award in this case necessarily was limited to backpay. Although the jury could have interpreted the judge's statement to mean that Section 1981 damages were limited to the backpay recovery allowed under Title VII, it is equally possible that it could have interpreted the judge's statement to mean that recovery under Title VII could include the full panoply of damages allowed under Section 1981. Under the latter interpretation, the damages awarded by the jury could have included, in addition to back pay, compensation for other damages as well. Of course, neither interpretation of the judge's statement would be a correct statement of the law, but the parties did not object to the judge's statement. Thus, it is too late for defendant to argue that the statement to the jury constituted reversible error. *See* Fed.R.Civ.P. 51; *Zimmerman v. First Federal Savings & Loan Ass'n*, 848 F.2d 1047, 1054 (10th Cir.1988). Accordingly, we affirm the district court's denial of remittitur of damages.

## II.

### PUNITIVE DAMAGES

On cross-appeal, plaintiff argues that the district court erred in vacating the jury's award of punitive damages. At trial, the judge instructed the jury that it could award punitive damages if it found actual damages and if it found that "the acts complained of were oppressively, wantonly, or maliciously done." (Instruction No. 11.) After the jury awarded plaintiff $25,000 in punitive damages, defendant moved for judgment notwithstanding the verdict. Defendant argued that there was not sufficient evidence for the jury to conclude that the defendant discriminated against plaintiff willfully or maliciously, which is re-

quired for the award of punitive damages under Section 1981, *see EEOC v. Gaddis*, 733 F.2d 1373, 1380 (10th Cir.1984). After considering defendant's motion, the judge held that he "erroneously submitted the issue of punitive damages to the jury under the law of the State of Oklahoma and the jury verdict should be set aside insofar as it pertains to the award of punitive damages." (March 2, 1987 Journal Entry.)

■ Initially, we note that the trial judge erred in relying on Oklahoma law to vacate the award of punitive damages. As this court previously has held, *federal* standards govern the determination of punitive damages under federal civil rights statutes. *Garrick v. City and County of Denver*, 652 F.2d 969, 971 (10th Cir.1981); *see also Gordon v. Norman*, 788 F.2d 1194, 1199 (6th Cir.1986); *cf. Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 238–40, 90 S.Ct. 400, 405–06, 24 L.Ed.2d 386 (1969) (federal standards govern compensatory damages in civil rights cases).

■ In the Tenth Circuit, the standard for punitive damages for discrimination in violation of federal civil rights is that the discrimination must have been "malicious, willful, and in gross disregard of [plaintiff's] rights." *Gaddis*, 733 F.2d at 1380. The standard for punitive damages under Oklahoma law allows juries to award punitive damages when there is "wanton or reckless disregard for the rights of another, oppression, fraud or malice, actual or presumed." Okla.Stat.Ann. tit. 23, § 9 (West 1987). That standard for punitive damages is less rigorous than the Tenth Circuit rule.[5] Therefore, because the trial judge vacated the punitive damage award under the Oklahoma standard, we can assume that he would have vacated the

---

**4.** Although full compensatory damages and exemplary damages are allowed under Section 1981, compensatory and punitive damages are not available in Title VII employment discrimination suits. *Skinner v. Total Petroleum, Inc.*, 859 F.2d 1439, 1443 (10th Cir.1988). Rather, Title VII authorizes only equitable remedies, including backpay. *See* 42 U.S.C. § 2000e–5(g).

**5.** Similarly, the judge's instruction to the jury in this case, which provided that plaintiff must show "by a preponderance of the evidence that the acts complained of were oppressively, wantonly, *or* maliciously done," *see* Instruction No. 11 (emphasis added), was no more restrictive than the appropriate federal standard.

award had he applied the correct federal standard.

█ In her brief on appeal, plaintiff does not refer to any evidence that would compel us to reverse the denial of punitive damages. Although she asserts that the defendant's acts "showed personal animosity and malice toward the appellant, and presented a strong case for the awarding of punitive damages," she fails to provide any support in the record for that assertion. Thus, plaintiff has failed to explain why, under the facts of this case, the trial judge committed reversible error. Further, our own review of the trial record does not reveal any evidence that would compel us to reverse the district court.

█ Although the determination of the amount of punitive damages is within the sound discretion of the trier of fact, the issue of the sufficiency of evidence to justify an award of punitive damages is an issue of law for the court. *Miller v. Cudahy Co.,* 858 F.2d 1449, 1457 (10th Cir. 1988). Thus, despite the jury's discretion, an award of punitive damages must be set aside if the court determines that the issue should not have been submitted to the jury in the first place. *Lavicky v. Burnett,* 758 F.2d 468, 477 (10th Cir.1985), *cert. denied,* 474 U.S. 1101, 106 S.Ct. 882, 88 L.Ed.2d 917 (1986). In this case the trial judge did determine that he should not have submitted the issue of punitive damages to the jury. Because plaintiff has not shown that the trial judge's decision was erroneous, we affirm.

AFFIRMED.